## CALKINS v. PONCA CITY.

No. 13484—Opinion Filed March 27, 1923.

(Syllabus.)

**1. Municipal Corporations—Powers—Abatement of Nuisances.**

The Constitution and statutes delegate to cities power to declare and abate nuisances.

**2. Same—Authority to Adopt Charters.**

Article 18 of the Constitution authorizes cities of over 2,000 population to adopt a charter, consistent with and subject to the Constitution and laws of the state.

**3. Same—Provisions of Charter—Nuisances.**

Sections 6 and 35 of the charter of the defendant city authorize it to adopt ordinances for the protection of life, health, and property of its inhabitants, and to declare, prevent, and summarily remove nuisances.

**4. Same—Function as Agency of State.**

A municipal corporation has a dual character—one public and the other private. In its public character, it acts as an agency of the state, the better to govern that portion of its people residing within the municipality. The exercise of such powers is legislative and discretionary. Under its charter and the statutory provision, the defendant city, in abating nuisances, is carrying out its public function and duties as an agency of the state.

**5. Same—Delegated Authority as to Nuisances.**

The authority of the city to declare a public nuisance is a delegation of police power, primarily lodged in the state, in order that it may be more effectively exercised by officers locally acquainted with the necessities of the particular community.

**6. Same—Decision of City Authorities—Conclusiveness.**

If it appears that the question of a nuisance or not is one as to which there might be an honest difference of opinion in impartial minds, the action of the city commissioners is conclusive of the question.

**7. Same—Reasonableness of Ordinance.**

The extent of the power of the court in the proceeding at bar is limited to a determination as to whether the ordinance in question is, under the facts, unreasonable and arbitrary, and if such ordinance is not unreasonable or arbitrary, the determination by the commissioners that the buildings in question were injurious to the health and safety of the community, and a public nuisance, is conclusive upon the court.

**8. Same.**

Record examined, and held, that the action of the commissioners was neither unreasonable nor arbitrary.

Error from District Court, Kay County; J. W. Bird, Judge.

Action by O. F. Calkins against the City of Ponca City to enjoin enforcement of nuisance ordinance. Judgment for defendant, and plaintiff brings error. Affirmed.

L. A. Maris, for plaintiff in error.

James Q. Louthan, for defendant in error.

BRANSON, J. The parties to this cause appeared as plaintiff and defendant in the district court, respectively, as they appear here in this proceeding in error.

Lots 23 and 24, block 40, in the town site of Hartman, a subdivision of the city of Ponca City, Kay county, Okla., and the improvements thereon were at all times herein mentioned the property of the plaintiff, C. F. Calkins. Two small frame buildings are located on said lots, and have been rented by the plaintiff, one for a grocery store. The photograph of the buildings presented in the record as exhibits revealed the same as most unsightly, especially considering the surroundings thereof. But a fairly accurate description of the condition of the buildings in question is disclosed by the testimony in this cause, which will be hereinafter referred to.

The defendant city in 1920 adopted a charter, under and by virtue of article 18 of the Constitution of the state (Williams' Constitution, pages 204 to 212, inclusive). The charter of the said city vests the control thereof in a board of commissioners, with the power vested in said board of commissioners to prescribe the manner in which any power of the city may be exercised.

Under the said constitutional provision the powers of the city are derived from the state, and must be consistent with and subject to the Constitution and laws of the

state. The record discloses that in section 35 of said charter, defining the powers of said city, among other things, is found:

"To define what shall be determined nuisances within the city, * * * to abate such nuisances, either summarily or by process; and to provide punishment for and inflict punishment upon the makers or keepers thereof."

Section 6 of the said charter, among other things, provides:

"The city of Ponca City shall have power to enact and enforce all ordinances for the protection of the life, health, and property of the inhabitants; to prevent and summarily abate and remove nuisances, both public and private; to provide, preserve, and enforce good government, and to do and provide for the doing of all things which may be proper and necessary for the promotion of the general welfare of the inhabitants."

Actiong under and in pursuance of the said charter provisions and the statutes of the state (sections 594, 4250 and 4251, Rev. Laws Okla. 1910), the board of commissioners of the said defendant city passed an ordinance which in substance, material here, is: That after full, free, careful, and complete investigation, examination, and consideration of the premises, the board of commissioners of the city of Ponca City, Okla., found that the structures, consisting of wooden, paper, and sheet-iron buildings, and all other structures and their appurtenances situated and located on lots 23 and 24 in block 40 in the town site of Hartman, a local subdivision of the city of Ponca City, Okla., * * * have become and now are in unsafe, decaying, dirty, unsanitary, and dangerous conditions, and that such conditions existed for several years theretofore; that the said structures are rotten, unstable, and unsafe, and in danger of falling down and injuring occupants thereof and passing pedestrians, and are what are known as fire-traps, and are in great and continuous danger of taking fire, owing to their age, decay, general unkept condition, and the appearance of great numbers of rats infesting them, and are a constant menace to the health and safety of the people, and greatly increase the fire hazard to the adjoining and nearby properties; and the said structures constitute public nuisances, and as such, of imminently dangerous character, require abatement at once.

The remainder of the ordinance is, constitutes, and gives authority to certain officials to enforce its determination as to said buildings, the manner and method of doing so, and the declaration that anyone interfering with the proper performance of the duty of such officials in carrying out the declaration and determination that the said buildings constitute nuisances commits an offense, defining and prescribing the punishment therefor.

The said condemning ordinance was adopted on the 29th day of December, 1921, and on the 4th day of January, 1922, the plaintiff secured a temporary injunction against the defendant, in the county court of Kay county (the judge of the district court being absent from the county) enjoining the city from enforcing the said ordinance, or in any wise interfering with the said buildings.

In his petition the plaintiff, in substance, pleads that he is the owner of the property hereinabove described, and that on the 29th day of December, 1921, the defendant city passed and adopted an ordinance condemning said frame buildings, declaring them to be nuisances, ordering their destruction, and removal from said described premises at once, and providing for the removal and destruction of said buildings by the chief of the fire department; that the defendant has threatened to enter upon said premises and remove and destroy said buildings, and unless prevented by an order or injunction from the court, it will so enter upon said premises and destroy and remove said buildings, all to the great injury and damage to this plaintiff; that the board of commissioners of the defendant city is not a court, and has no judicial authority and no jurisdiction to hold a hearing and decide, determine, and adjudge the said buildings to be a nuisance; that the said board of commissioners is a legislative body, and is without authority to sit as a judicial body, and that judicial authority cannot be conferred upon the commissioners, because of its being a legislative body, and that the finding of the said commissioners that said buildings are unsafe, unsanitary fire-traps and dangerous is a usurpation of judicial powers assumed but not possessed by the said commissioners, and is in excess of and beyond their authority under the law.

The defendant city filed an answer in which it pleaded the provisions of the city charter, the ordinances, etc.

On the trial in the district court of Kay county, the temporary injunction was on May 17, 1922, dissolved, and the plaintiff brings the cause here, and assigns as error, in effect:

(1) That the district court of Kay county erred in sustaining the motion to dissolve.

(2) The court erred in excluding competent and material testimony.

(3) The court erred in not considering the possibility of improper motives in passing the ordinance.

(4) That the district court erred in not holding that the commissioners could not have legislative, executive, and judicial power vested in them, as one body, and in not holding that their attempted exercise of judicial and executive power by this legislative body with reference to the condemning of these buildings was unconstitutional and void.

Plaintiff in his brief says that in an equitable action this court will weigh the evidence, and if the judgment of the trial court is clearly against the weight thereof, will cause to be rendered such judgment as the lower court should have rendered (Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069; Schock et al. v. Fish, 45 Okla. 12, 144 Pac. 584); and to this principle, as frequently announced by this court, plaintiff argues as to the weight of the evidence in this cause, and concludes that the weight of the evidence produced on the injunction hearing was that the buildings were not a public nuisance, and the trial court should have found for plaintiff.

This contention of the plaintiff is presented as if this were an appeal from a final judgment in a proceeding in equity instituted by the city to have the buildings in question adjudged and decreed a public nuisance, and removed as such. If that were this case, this court would review the evidence, and if it found that the decree of the trial court was clearly against the weight of the evidence, the same would be vacated and set aside, and such judgment or order entered as the record justified. But the principle governing and controlling this case does not warrant this court in reviewing the evidence, as it would in such a case, for the purpose of reaching such a determination, as will be seen later.

The second and third assignments of the plaintiff are that the district court erred in excluding competent and material testimony. The excluded testimony to which the brief refers went to the improper motive of the commissioners of the defendant city in passing the ordinance in question. The plaintiff refers to what appears in the record to have been a suit filed against the Chamber of Commerce of the city of Ponca City by the plaintiff sometime prior to the passage of the ordinance in question. The action of the court in excluding the evidence referred to—if any evidence in fact there was—should have been preserved in the record. The record fails to disclose that plaintiff introduced any witness to prove any state of facts showing the connection of the commissioners with the Chamber of Commerce, or that the commissioners were in any wise interested in the Chamber of Commerce, or the suit in question, or any state of facts from which an inference could be drawn that the commissioners from malice or other improper motive, by reason of the suit against the Chamber of Commerce, passed the ordinance in question. No such witness having been offered, and no such testimony having been tendered and incorporated in the record, nothing is presented to this court for its determination as to the propriety or impropriety of the trial court's ruling on the alleged exclusion of evidence.

The fourth and last assignment of plaintiff is that the trial court erred in not holding that the commissioners of the defendant city could not have legislative, executive, and judicial power vested in them as one body. Plaintiff contends, under this assignment of error, that the ordinance passed by the commissioners was an effort on their part to act as a court, and judicially determine that the buildings in question were a nuisance, and cites numerous authorities that the legislative, executive, and judicial branches of the government must be kept separate and distinct. Plaintiff says: "Courts of equity are open to the city to condemn these buildings. This is the orderly forum for such actions. There the owners of the buildings will have a right and opportunity to be heard after being duly summoned," etc.; and, again;

"No action for damage could be maintained against the city though the destruction of his property by this ordinance is wrongful, because such act is the exercise of the governmental function of the city. Neither would the officers who carry out such governmental function be personally liable."

The above outlined contentions of the plaintiff are either not tenable, not raised by the record, or proceed upon an erroneous theory of the law.

A municipal corporation has a dual character, one public, and the other private, and exercises correspondingly two-fold functions, the one governmental and legislative, and the other private and municipal. In its public character, it acts as an agency of the state, to enable it the better to govern that portion of its people residing within the municipality, and to this end there is granted it by the charter of its creation powers and duties to be exercised and performed exclus-

ively for public governmental purposes. Such powers are legislative and discretionary. Jones v. City of Williamsburg, 97 Va. 722.

With the view of properly exercising this governmental and legislative function, the state delegates to municipalities, either by the Constitution or statutes of the state, the power to exercise these functions. In this state, both the Constitution and the statutes have given municipalities power to pass ordinances determining and abating nuisances. Under and by virtue of its charter provision above quoted, the action of the defendant city in passing the ordinance in question was exercising its public function given by the state. Flannagan v. City of Bloomington, 156 Ill. App. 162; Tomerlin v. Hildreth et al., 65 N. J. Law, 438; Clark v. Atlantic City, 180 Fed. 598.

The commissioners determined the buildings in question to be a nuisance. This is a determination beyond which the courts are not at liberty to go, if it appears from the proceeding instituted that the question of a nuisance or not, which the ordinance determines, is one as to which there might be an honest difference of opinion in impartial minds. Duncan Electric & Ice Co. v. City of Duncan, 64 Okla. 211, 166 Pac. 880; In re Jones, 4 Okla. Cr. 74, 109 Pac. 570.

In doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities, in exercising their legislative functions, under a delegation of power to declare and define what shall be nuisances, their action under such circumstances would be conclusive of the question. Kansas v. McAleer, 31 Mo. App. 433.

The extent of the power of the court in the proceeding at bar is limited to a determination as to whether the ordinance in question is, under the facts, unreasonable and arbitrary, and if such ordinance is not unreasonable or arbitrary, the determination by the commissioners that the buildings in question were injurious to the health and safety of the community, and therefore a nuisance, is conclusive upon the court, and the action of the trial court in dissolving the injunction should be affirmed.

The power to declare a thing a public nuisance is a delegation of police power, vested in the state, in order that it may be more effectively exercised by officers locally acquainted with the necessities of the particular community. It is not a judicial function solely, but by analogy is similar to the duty and power of the state to define and punish acts as crimes. Certain acts are punishable because the state has made them such. The state gives to cities power to penalize certain acts, and declare nuisances—things injurious to health and safety—all of which finds its basis in the authority of the state to perform its duty in safeguarding its people—its police power, the exercise of which is legislative, both by the state and its agencies.

In the case of Harmison v. City of Lewistown (Ill.) 46 Am. St. Rep. 893, it is said:

"Under a general grant of power over nuisances, town authorities have no power to adopt an ordinance declaring a thing a nuisance, which in fact is not one, but in doubtful cases, depending upon a variety of circumstances and requiring judgment and discretion, their action is conclusive."

In the case of Bowers v. City of Indianapolis (Ind.) 13 Ann. Cas. 1199, the Supreme Court of Indiana said:

"* * * It is very clear that it was the purpose of the General Assembly to authorize cities to exercise a legislative power in the denouncement as public nuisances of some things which were not within the purview of the criminal legislation of the state, or, in other words, nuisances per se, for otherwise the grant of power would have been of no effect. While it is clear that cities are not authorized under such grant to condemn as a nuisance that which, from its evident character, condition, and surroundings, is clearly not of such a nature, yet if that which is prohibited lies on the border line of a public nuisance, so as fairly to invoke the legislative judgment in the determination of the question as to whether the thing should be prohibited, we are of opinion that we should accord to such determination the same respect as would be due to a like conclusion expressed in the form of law by the general assembly."

And in the case of North Chicago City R. Co. v. Lakeview (Ill.) 44 Am. St. Rep. 788, it is said:

"In doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power, like the one we are considering, their action under such circumstances would be conclusive of the question."

In Sedgwick Constitutional Law, 434-5, it is said:

"In very many instances, summary proceedings without the usual forms of a regular judicial trial have been held valid, as falling within the police power of the city."

Because the necessity of society and good government demand a certain amount of summary action which would be ineffectual if delayed by ordinary machinery of more regular judicial trial, abating a nuisance summarily, where the declaration of such nuisance is authorized by law, does not take property without due process of law, for the common law recognized the power to abate nuisances in a summary manner. Every holder of property has and holds the same charge with the implied liability that his use thereof shall not be injurious to others, nor to the rights of the community. When his property becomes or is of such a nature as to be injurious to the health or safety of the community, and said property is, under the exercise of the police power of the state delegated to the municipality, removed or destroyed, it is not the taking of his property without compensation for public use, but it is the placing thereof beyond its private use to the injury of others. If the power delegated to municipal corporations to pass ordinances declaring nuisance finds sanction in the Constitution and laws of the state, it cannot. be declared invalid, and the action of the commissioners repudiated, merely because of a contention that it is taking private property without due process of law.

Section 4260, Rev. Laws 1910, provides:

"A public nuisance may be abated by any public body or officer authorized thereto by law."

A public nuisance is not necessarily one affecting the government or the entire community of the state. It is public if it affects the surrounding community generally, or the people of some local neighborhood, and such a nuisance is one which the common council is authorized as a government agency to abate, in order to protect the health of the inhabitants of the incorporated city. Pine City v. Munch (Minn.) 6 L. R. A. 763.

Plaintiff contends that his constitutional rights have been invaded without due process of law; that property has been taken, or is about to be taken, and that the constitutional guarantee that property shall not be taken for public use without the consent of its owner or without just compensation is being violated.

The constitutional inhibitions referred to have no application as limiting the exercise of those powers which find their basis in the right and duty of the state to protect its citizens as to health and safety. In the exercise of its police power, the state has general control over private property, in so far as it is necessary to properly carry out and enforce the duty of the state as to the health and safety of the people thereof. Every holder of property, however absolute his title, holds it under the implied liability that it shall not be injurious to others, nor to the rights of the community. If it be hurtful to the community, he is deprived of the use thereof, not for the use of the community or of the state, which takes no benefit or profit from it, but because the property or the use thereof has become noxious and injurious to the health or the safety of the people of the community. It is in no sense an appropriation of the property to the public use, but is exercise of the authority of the state as the guardian of the safety and the health of the people in restraining the injurious private use by the owner thereof. The summary abatement of nuisance is not in violation of the Constitution as taking private property for public use, without compensation, or depriving one of his property without giving him his day in court. Theilan v. Porter, 14 Lea (Tenn.) 622.

The record discloses a photograph of the buildings in question, and the surroundings. We have examined this and the testimony found in the record, submitted by the State Fire Marshal, the Superintendent of Public Health, and other witnesses who were acquainted with the buildings in question, and their dangerous and unhealthful character. From this testimony, there develops a state of facts from which the following deduction may fairly be made.

The photograph in the record completely discloses the character of the shacks, and at the same time, in a measure, the character of the buildings adjacent to and near them. They stand on the edge of the business district of the defendant city—the prima donna oil center of North Oklahoma. They are surrounded by up-to-date business houses on one side, modern residences on the other, in which the owners evidently take pride. Modern, up-to-date electric light posts and lamps appear on the thoroughfares in front, the rear and on the sides of the buildings in question. The owners of property adjacent thereto have improved the same, assisting thereby in the building of this beautiful city to which people have flocked and created the unearned increment to plaintiff's property, amounting to thousands of dollars in valuation more than when he purchased the lots and moved the shacks thereon 21 years ago. Although thus surrounded, the plaintiff for a scanty revenue, has main-

tained the buildings in question as a dispensary of rat-gnawed foods to those who unwarily have traded in said buildings. Their sills rotten, the floors resting upon the ground, the roofs rotten, patched alternately with new shingles and pieces of rust perforated sheet iron, the brick of the flues partly fallen off, the fronts insecure and shaky, rat holes in the floors, through which the rats come at night, rat nests underneath the floors, where they stay, except when they are driven out by water, which after rain stands as a pond around and underneath the buildings, and are thereby compelled to emerge with their feet wet and dripping with filth, to amble around over the foods offered for sale next day, the buildings remain. Rotten wooden awnings covered with sheet iron, perforated with rust, hang over the sidewalk, suspended by what appears to be a rusty wire, extending from the outer edge of the awning back over the roof to the half fallen flue. Without having ever been painted, the sides practically rotten, the support given way, propped up by temporary braces, all ready to go, as the One Horse Shay, depicted by Oliver Wendell Holmes:

"All at once, and nothing first,

Just as bubbles do, when they burst."

Under these conditions, the board of commissioners of the city passed the ordinance in question, condemning the said buildings, and directing that the owner thereof, within the time specified in the ordinance, should remove the same from the premises.

The record, we think, fails to show that the action of the city commissioners was arbitrary. This being true, the question is not whether the buildings were in fact nuisance, which a court of equity would have decreed abated as such, but whether the action of the commissioners in passing the ordinance in question was in excess of their authority and arbitrary.

Feeling that the ordinance did not exceed their delegated authority, and that it was neither arbitrary nor wrongful, we think that its legislative determination that the buildings in question were public nuisances, and ordering them abated, is conclusive on the courts.

The action of the trial court in dissolving the injunction is therefore affirmed.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER, NICHOLSON, and COCHRAN, JJ., concur.