## MAGNOLIA PETROLEUM CO. v. WRIGHT et al.

No. 16176—Opinion Filed March 2, 1926.

Rehearing Denied March 8, 1927.

1. Municipal Corporations—Cities May Declare and Abate Nuisances.

The Constitution and statutes delegate to cities power to declare and abate nuisances.

**2. Same—Nuisances—Declaration.**

A grant of power to a municipality to declare what shall constitute a nuisance and to remove same, while it does not empower the municipality to declare a thing a nuisance which is clearly not one, does empower it to declare anything a nuisance which by reason of its location or use, or local conditions and surroundings may be or does, among other things, become a nuisance within the statutory definition of that term.

**3. Automobiles—Filling Station as Nuisance per Accidens.**

A public drive-in oil and gas filling station is not a nuisance per se; it may be a nuisance per accidens.

**4. Evidence—Judicial Notice—Noise of Gasoline Motors.**

The court will take judicial notice that the mechanism of gasoline motors operates on the principle of explosion, and that such explosions and other unusual noises are made by stopping and starting of gasoline motor vehicles; and that such noises ordinarily are distinctly audible for a distance greater than 100 feet.

**5. Municipal Corporations — Ordinances — Reasonableness.**

The court ought to be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a municipality to determine what rules are necessary for their own local government. This is peculiarly true with reference to the police power. A city ordinance making it unlawful to install, maintain, carry on, operate, or run an oil mill, tannery, cotton gin, steam laundry, machine shop, blacksmith shop, or filling station within 200 feet of any church building or schoolhouse, and declaring the same to be a nuisance subject to abatement, is not invalid as being an unreasonable exercise of the police power.

**6. Same—Ordinances—Presumption.**

The existence, and not the nonexistence, of the necessary facts to sustain a city ordinance, is presumed in the absence of evidence to the contrary.

**7. Pleading — Injunction—Allegations— Inadequate Remedy at Law.**

In a petition for equitable relief, a general allegation that plaintiff has no speedy or adequate remedy at law is a mere conclusion and of no effect. Where the facts stated in the petition show that the remedy at law is inadequate, it is not necessary to allege in terms that the remedy at law is inadequate.

**8. Nuisance — Injunction — Quia Timet— Grounds.**

To enjoin a threatened nuisance, it must appear that the injury would be irreparable in damages, and the evidence must be clear and convincing, not of a possibility or apprehension, but of a reasonable probability, that the injury will be done.

**9. Judgment Sustained.**

The judgment for injunction quia timet is not clearly against the weight of the evidence under the foregoing rules, and is affirmed.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by Geo. C. Wright et al., Trustees of the First Baptist Church of Altus, Okla., against the Magnolia Petroleum Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

W. H. Francis, B. B. Blakeney, Hubert Ambrister, and Frank Petree, for plaintiff in error.

Robinson & Oden, for defendants in error.

Opinion by ESTES, C. An ordinance of Altus, a city of the first class, made it unlawful for any person "to install, maintain, carry on, operate, or run an oil mill, tannery, cotton gin, steam laundry, machine shop, blacksmith shop, or filling station within 200 feet of any church building or schoolhouse" within the limits of said city, and declared the doing of the same "to be a nuisance and subject to abatement upon suit by any citizen or organization affected thereby".

The church building cost about $100,000, and is on lots on Main street one block north of the public square and main business section of said city. Immediately west and across said street, which is about 100 feet wide, on its lots, defendant proposed to build and had begun the construction of, a public drive-in oil and gas filling station, to cost about $8,000, same being within 200 feet of said curch. Being in equity, the cause was tried to the court, and from the judgment perpetually enjoining defendant from so constructing and operating such station, the latter appeals. Our duty is to weigh the evidence and determine, under the law, whether the judgment is clearly against the weight thereof. The proposition argued is that such ordinance is void and of no effect, for that said city had no authority or power to declare such lawful business a private nuisance and delegate the abatement thereof to those affected by the maintenance thereof.

1. Accordingly, it is first suggested that because Altus is a city of the first class instead of a town, it has not such power. A

municipal corporation, being imperium in imperio, has no authority in this behalf, except such as is expressly, or by reasonable implication, delegated to it by the Legislature. By the fourth paragraph of section 4762, C. O. S. 1921, incorporated towns are empowered to declare what shall constitute a nuisance, and to prevent, abate, and remove same, and take such other measures for the preservation of the public health as they may deem necessary. It is contended that a city of the first class has not been delegated such power. If true, this were a grievous oversight of the Legislature, since, undoubtedly, the possession of such power by a city, for the purposes for which same may be given, is certainly more important and necessary than by a town. It is evident from the statute, supra, that the delegation therein appertains to the police power possessed by the state. Section 4569, Id., pertaining to cities, is:

"The council may purchase or condemn and hold for the city, within or outside of the city limits, all necessary land for hospital purposes and waterworks, and erect, establish, and regulate hospitals, workhouses and poorhouses, and provide for the government and support of the same, and make regulations to secure the general health of the city, and to prevent and remove nuisances, and to make provision for furnishing the city with water, and water rates shall be fixed annually by the council at their first meeting in June; provided the condemnation of such property outside the city limits, shall be regulated in all respects as provided by law."

Clearly, this entire section pertains to, and is a delegation of, police power. The power of eminent domain therein granted is incident thereto. The power therein granted to prevent and remove nuisances appertains to such police power, as much so, and as essentially so, as the power therein delegated pertaining to hospitals, waterworks, and regulations to secure the general health. The Legislature thus intended by such delegation of power to prevent and remove nuisances; that a city, even of the first class, could prevent any act or omission of any duty by any one, which act or omission, among other things, annoys, injures or endangers the comfort, lives, health or safety of others, according to the definition of the term nuisance by section 7870, Id. Moreover, section 4547, Id., provides in a plenary fashion, inter alia, that the mayor and council of cities have power to enact any and all ordinances not repugnant to the laws of the United States, and the Constitution and laws of this state, for the preservation of the peace and good order of the inhabitants. The powers thus delegated to a city are not dependent upon the exercise of same through any particular form of government, whether aldermanic, commission, or otherwise. By the tenor of the decisions of this court, it seems that no one heretofore has contended that a city does not have as much power as a town in this behalf. In Walcher et al. v. First Presbyterian Church of Norman, 76 Okla. 9, 184 Pac. 106, Norman being a city of the first class, this court considered the validity of an ordinance, in all essentials identical with that in the instant case, and held:

"That such ordinance is of a regulatory nature and reasonable, and within the police and sanitary powers of a city to enact and enforce. * * *"

In Duncan Electric & Ice Co. v. City of Duncan, 64 Okla. 211. 166 Pac. 1048, it is said:

"That cities have the power to declare and abate nuisances in this state, is no longer an open question."

The first paragraph of the syllabus of Calkins v. Ponca City et al., 89 Okla. 100, 214 Pac. 188, is:

"The Constitution and statutes delegate to cities power to declare and abate nuisances."

The delegation of such power to a municipal corporation vests the corporation, within the sphere of the powers delegated, with a control as absolute as the Legislature would have possessed, if it had never delegated the powers, and the discretion of the municipality, in respect to the exercise of the powers granted, is as wide as that possessed by the government of the state. 28 Cyc. 693, and note to Robinson v. Mayor of Franklin (Tenn.) 34 Am. Dec. 625, 632, citing a formidable array of authorities.

2. In Ex parte Jones, 4 Okla. Cr. 74. 109 Pac. 570, it is held:

"A statutory grant of power to a municipality to declare what shall constitute a nuisance does not empower the municipality to declare a thing a nuisance which is clearly not one; but it does empower the municipality to declare anything a nuisance which is so per se, or which by reason of its location, management, or use, or of local conditions and surroundings, may or does become such within the common law or statutory definition of a nuisance, or those things which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds.

"Where a thing may or may not be a nuisance depending upon its location, its management, or use, and the conditions ex-

isting in the municipality, thus requiring judgment and discretion in determining the matter, the determination of the question by a municipality having power to declare what shall be a nuisance is conclusive upon the courts."

Thereafter said rules have been followed by this court, a late case being Calkins v. Ponca City et al., supra. In Duncan Electric & Ice Co. v. City of Duncan, 64 Okla. 211, 166 Pac. 1048, it is hedl:

"A grant of power to a municipality to declare what shall constitute a nuisance and to remove same, while it does not empower the municipality to declare a thing a nuisance which is clearly not one, does empower it to declare anything a nuisance which by reason of its location or use, or local conditions and surroundings, may or does become a serious obstruction to the use of the streets for public purposes, or is a nuisance within the common-law or statutory definition."

3. In the instant case, the court found generally for plaintiffs, making no special findings as to the character of the nuisance. Marland Refining Co. v. City of Hobart, 113 Okla. 36, 237 Pac. 857, holds:

"A drive-in filling station is not a nuisance per se, and where an unenforceable ordinance of the city is relied upon and the alleged violation of such ordinance consists in acts that do not constitute a nuisance per se, a court of equity will not interfere therewith and restrain such acts."

E converso, a court of equity will interfere in a proper case to restrain the operation of a drive-in filling station, though not a nuisance per se, when operated in violation of a valid ordinance declaring it a nuisance. Said proposed filling station would not be a nuisance per se (Marland Refining Co. v. City of Hobart, supra). just as, under similar circumstances, a laundry would not be a nuisance per se (Walcher et al. v. First Presbyterian Church of Norman, supra). It is made plain in the body of that opinion that such station, were it a nuisance at all, would be such by reason of its locality, surroundings, or the manner in which it might be conducted; that is, such station may be or become a nuisance per accidens in contradistinction to a nuisance per se (29 Cyc. 1153), that is, according to the second classification in Patterson v. Roxana Petroleum Co., 109 Okla. 89, 234 Pac. 713, to wit:

"An instrumentality that is at all times and under all circumstances, irrespective of its location and environment, a nuisance, is said to be a nuisance per se. There are instrumentalities, however, which in their nature are not nuisances. and whether a particular instrumentality constitutes a nuisance depends upon its surroundings, the manner in which it is conducted or managed, or other circumstances."

4. Although relying primarily on said ordinance, the church trustees alleged and the evidence tends to show that more or less congestion of traffic would be incident to the operation of such station, thus increasing hazards to the lives and safety of pedestrians in this particular location; that noises would be made by the stopping and starting of motor vehicles at such station; that in consequence thereof the operation of such station would greatly interfere with and hinder the use and enjoyment of the church building and property by its members and those attending its services. Courts have current and common knowledge relative to automobiles, including the fact that they make unusual noises (Ex parte Berry [Cal.] 82 Pac. 44); and the fact that a city arc light will cast its rays farther than 300 feet (Meehan v. Great Northern Ry. Co. [Mont.] 114 Pac. 781). Likewise, we know judicially —and the evidence is undisputed — that noises really out of the ordinary, and of more or less intensity, would emanate from such filling station by such stopping and starting of engines and otherwise, and be audible farther than 100 feet upon property of plaintiffs; that such would be the case even though such station be an ordinary one and conducted by defendant in the ordinary and even careful and usual manner. Explosions of gasoline motors, being the principle of their mechanism, and other unusual noises of automobiles, are certainly of the most common knowledge and notoriety. We conclude that Altus had the power "to prevent and remove nuisances," said ordinance preventing, inter alia, the construction and maintenance of a filling station within 200 feet of said church; that such filling station. though not a nuisance per se, by reason of its location and use in the particular local conditions and surroundings, if permitted to be operated, will annoy, injure or endanger the comfort, lives, health or safety of plaintiffs, or render them insecure in the use of their property, according to the definition of nuisance in section 7870, Id. When it appeared by the evidence, admissions of the parties, or otherwise, that this filling station would be constructed and operated as an ordinary drive-in filling station, plaintiffs were entitled to injunction to prevent the construction and operation of same in violation of said ordinance, under the statutes and authorities aforesaid. We cannot say that such station so constructed and operated within such distance is clearly not a nuisance.

5. Reasonableness is the paramount test by which courts determine the validity of ordinances. In Walcher et al. v. First Presbyterian Church of Norman, supra, this court upheld as reasonable, an ordinance prohibiting the installation, maintenance, carrying on, or operation of an oil mill, tannery, cotton gin, steam laundry, machine shop, garage, blacksmith shop, or filling station, within 150 feet of any church, school or hospital. A steam laundry within 150 feet of a church was the subject of that controversy. On principle, that case is so identical with the instant case, that we consider the same controlling, since the greater distance involved in the instant case is still within the discretion and authority of the city in enacting the ordinance in question. Courts should be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in permitting the inhabitants of a municipality to determine what rules are necessary for their own local governmerc. City of Tacoma v. Keisel (Wash.) 124 Pac. 137. It is democratic that each city or community should, so far as practicable, determine its own standard of quietude and other conditions under the police power. This may vary in different communities. We do not deem the ordinance in question invalid as being unreasonable.

6. Defendant attacks the form and adoption of said ordinance. On July 25, 1924, a permit for constructing "a building," on its lots, was issued by the city engineer of Altus "the plans of same to be submitted for approval within 60 days." On September 20, 1924, an unsigned document, admitted to have been issued by the engineer, was delivered to defendant, stating, among other things:

"You understand that I issued your building permit to build on this property to which the city council took exceptions. However, it is not for me to say whether they can prohibit you from putting a filling station on this property. I am only following the ordinance on buildings."

If this was a valid permit, the same expired prior to the beginning of construction and the enactment of said ordinance. On January 17, 1925, defendant first began, or was about to begin, the construction of such station. The council of Altus was called in special session by the mayor on January 20, 1925. on which day said ordinance was adopted. Section 4546, Id., provides that special meetings may be called by the mayor upon request. or notice in writing. signed by at least three members of the council, specifying the object and purpose of such meeting, by request or notice in writing, which shall be read at the meeting and entered at length in the journal, and no business shall be transacted at such meeting except that specified in the request. It was admitted that this ordinance was passed for the particular purpose of prohibiting the business of so building and operating such stations. The ordinance was pleaded and introduced in evidence. It seemed to be regular on its face as to approval. Therefore, the existence, and not the nonexistence of the necessary facts to sustain its validity, is presumed, in the absence of evidence to the contrary. State ex rel. Dawson v. City of Atchison (Kan.) 140 Pac. 873. Defendant did not show by the journal or minutes, or otherwise, that there was not a notice or request in writing signed by at least three members of the council on which the mayor had called such meeting. The general presumption that public officers do their duty may also properly be invoked in this behalf. The ordinance provided that it is necessary for the preservation of the public peace, health, and safety, that this ordinance be put in immediate effect. In Morgan v. City of Long Beach (Cal.) 207 Pac. 53, it is held, in the absence of evidence to the contrary, that the court will presume the city council in making declaration of urgency acted upon sufficient inquiry as to whether or not an emergency existed; the declaration of urgency being prima facie evidence of the existence of an emergency. In Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559, this court held that the declaring of an emergency by the Legislature, that it is immediately necessary for the preservation of the public peace, health or safety (with certain exceptions not involved in the instant case), is conclusive on the courts, which rule has been followed in numerous cases. The power of the city to declare an emergency in such case is a reasonable implication from the general power conferred upon a city to enact ordinances under the police power. We do not deem it necessary to discuss the other objections to this ordinance.

7. The contention that the petition does not state a cause of action for failure to allege that they have no plain, speedy, and adequate remedy at law, is untenable.

"As the jurisdiction of equity depends on the lack of an adequate remedy at law. a bill for an injunction must state facts from which the court can determine that the remedy at law is inadequate. A general allegation that plaintiff has no speedy or adequate remedy at law is a mere conclusion and of no effect. However, where the facts stated

in the bill show that the remedy at law is inadequate, it is not necessary to allege in terms that the remedy at law is inadequate." 32 C. J. sec. 542, p. 328. Crutcher v. Johnstone, 62 Okla. 92, 162 Pac. 201.

The petition does not so allege in haec verbis. The facts as alleged bring plaintiffs within the rule.

S. In Town of Rush Springs v. Bentley et al., 75 Okla. 119, 182 Pac. 664, it is held:

"As a general rule, courts of equity have power to give relief against either public or private nuisances by compelling the abatement, or restraining the continuance of the existing nuisance, or enjoining the commission or establishment of a contemplated nuisance."

See cases therein cited, and also Kenyon v. Edmundson, 80 Okla. 3, 193 Pac. 739. Plaintiffs' rights would not be reparable in damages by successive actions, if this station were permitted to be built and operated. It would not be practical to measure such damages. They should not stand by and permit defendant to construct and operate such station, before asking equitable relief, if they desired such relief. In 32 C. J. 42, the general rule is:

"It is not sufficient ground for an injunction that the injurious acts may possibly be committed or that injury may possibly result from the acts sought to be prevented; but there must be at least a reasonable probability that the injury will be done if no injunction is granted and not a mere fear or apprehension." Burnett v. Sapulpa Refining Co., 59 Okla. 276, 159 Pac. 360; Woodward v. Raynor, 29 Okla. 493, 119 Pac. 964; Hodgins v. Hodgins, 23 Okla. 625, 103 Pac. 711.

To enjoin a threatened nuisance, it must appear that the injury would be irreparable in damages, and the evidence must be clear and convincing, not of a possibility or apprehension, but of a reasonable probability, that the injury will be done. It is clear that, unless prevented by law, defendant will construct and operate such station. Under the authorities herein, it is also clear that the operation of such station would be a nuisance, since said city by ordinance has so declared, and since said ordinance is reasonable, and since we cannot say, in view of such location and all the surroundings that, it would clearly not be a nuisance.

The judgment for injunction quia timet is not clearly against the weight of the evidence under all these rules. Let the same be affirmed.

By the Court: It is so ordered.