**BAXLEY v. CITY of FREDERICK et al.**

No. 18653. Opinion Filed Oct. 23, 1928.

**85**

W. G. Roe and Stevens & Cline, for plaintiff in error.

Mounts & Chamberlin, for defendants in error.

LEACH, C. In September, 1924, T. A. Baxley, plaintiff in error, commenced this action in the district court of Tillman county, against city of Frederick et al., defendants in error, and prayed that ordinance No. 144 of the city of Frederick, which ordinance prohibited the construction and operation of gasoline filling stations, except those then existing, within the fire limits of the city, and provided a penalty by fine of not more than $100 for its violation, be declared null and void because the same was discriminatory, unreasonable, and not a proper exercise of authority, and further prayed that the defendants be restrained from interfering with him in the erection and maintenance of a filling station, and that they be directed to issue him a building permit covering the alteration of his building for use as a gasoline filling station. The defendants answered, specifically denying the allegations relied upon by plaintiff for relief. On a trial of the issues as then made, judgment was entered in favor of the defendants, and the plaintiff appealed to this court. Defendants in error failed to file a brief, and the cause was re-

versed and remanded for a new trial. Baxley v. City of Frederick, 113 Okla. 149, 239 Pac. 1116.

Upon remand of the case to the district court, the defendants, by leave of court, filed an amended answer, wherein they generally and specifically denied the allegations of plaintiff, and alleged that the operation of a filling station on plaintiff's lot would constitute a danger to the life and safety of a majority of the school children of the city and other pedestrians and persons passing the corner of the proposed station; that the storage of oil and gasoline for use by plaintiff would constitute a hazard to property. As an additional defense to that pleaded in their original answer, they alleged the passage by the city of zoning ordinance No. 150, enacted April 28, 1925, which ordinance prohibited the use of plaintiff's property for a filling station.

Plaintiff filed reply, wherein he alleged that the purported zoning ordinance arose long after the commencement of the suit, and ought to be disregarded and stricken from the amended answer; that if the allegations pertaining to said zoning ordinance be allowed and considered as a defense, then such ordinance is invalid in that it violates the constitutional protection of property afforded by the Fifth and Fourteenth Amendments to the Constitution of the United States, and the provisions of the Constitution of Oklahoma, is confiscatory, discriminatory, and unreasonable. Further denied that the ordinance was ever passed or adopted in the manner required by law. A trial of the cause was had which resulted in a judgment for defendants, and plaintiff brings this appeal, assigning a number of specifications of error as grounds of reversal, only a portion of which are presented in his brief.

While reference is made in the brief of plaintiff to ordinance No. 144 and its invalidity, we do not deem it essential to a proper disposal of this appeal to consider or determine whether such ordinance is valid because it was apparently superseded by zoning ordinance No. 150, which latter ordinance is chiefly relied upon by defendants as a defense, and the argument of the parties is directed to the validity of the zoning ordinance.

One of the assignments of error relied upon and urged, but without any citation of authority supporting the same, is that the court erred in holding that the defendants were entitled to set out in their amended answer the zoning ordinance, because it was passed after the filing of the action, and in

permitting such ordinance to be offered in evidence.

We fail to observe any error in the action of the trial court in permitting the defendants to set up in their amended anwer the zoning ordinance. The mere fact that such zoning ordinance had not been enacted at the time the plaintiff commenced this action, would not preclude the defendants from pleading the same as a defense. Even were we to adjudge ordinance No. 144 invalid, such holding would not affect or invalidate the zoning ordinance, and the plaintiff would still be confronted with it.

Argument similar to the one advanced by the plaintiff here was presented in the case of State ex rel. Civello v. New Orleans (La.) 97 So. 440, 33 A. L. R. 260. It appears in that case, as in the instant one, the plaintiff attacked the validity of an ordinance prohibiting the erection of a business building in a certain portion of the city; subsequent to the filing of the case, the city enacted a further ordinance on the subject; the court there said:

"Relator's argument that the ordinance No. 6689 cannot govern this case without having a retroactive effect is not well founded. It is based upon the idea that relator, by applying for the permit, and by filing this mandamus suit to compel the issuance of the permit, became invested with an absolute right to the permit, which could not be divested by any subsequent legislation by the municipal council."

A zoning ordinance is not invalid as retroactive because made applicable to property for which a permit to construct a building has been applied for and a writ of mandamus sought to compel its issuance. That the court has decided that certain city zoning ordinances were ultra vires does not require the municipal authorities to ignore another ordinance forbidding the erection of a certain class of buildings in a prescribed district when application is made for a permit contrary to its terms.

"The fact that an owner of a town lot procured a writ of mandamus requiring a city to grant him a permit to erect a business building in a residential section of the city, and an injunction restraining the city from interfering with its erection, which judgments were entered before the city had any ordinance prohibiting such use of the property, did not prevent the city from enacting such valid zoning ordinance, nor make it inoperative as to the town lot in controversy as soon as it was enacted, when the status of the property was not changed in the short interval which elapsed between the entry of the judgments and the adoption of the zoning ordinance." Ware v. City of Wichita, (Kan.) 214 Pac. 99.

Plaintiff complains of the action of the court in permitting certain testimony by the major of the city relating to the enactment of the zoning ordinance, and says there was not competent evidence offered of the giving of the notice required by the state zoning statute, or of the proper publication of the zoning ordinance. The original zoning ordinance was admitted in evidence, and the plaintiff objected to its introduction, because it showed on it face that it was passed, or purported to have been passed, after the suit was filed, and cannot in any way affect the rights of the plaintiff, and for the further reason it does not show it was adopted regularly and in accordance with the statutes. The city clerk, testifying as a witness, was also tendered the printed book of the revised and compiled ordinances of the city which contained the zoning ordinances, and was asked the question: "Q. Is that the revised and published ordinances of the city of Frederick?" To which he answered: "A. Yes." Whereupon it was admitted in evidence over the objection of plaintiff, who objected to its admission because the book showed it was adopted subsequent to the time this case was filed and subsequent to the time it was reversed by the Supreme Court of the state of Oklahoma, and cannot affect the rights of plaintiff. The testimony complained of was that given by the mayor of the city, and is, in substance, as follows:

"Q. Just state what you did, Mr. Gamblin? A. We first, in passing that ordinance, elected a board of citizens. We elected a board, appointed by the council, of citizens that worked out the different zones for different businesses; that was brought back and put before the council."

Counsel for plaintiff objected on account of the ordinance having been purported to have been passed after the suit was filed, for which reason the evidence was incompetent, irrelevant, immaterial, and also because such matters are required to be matters of record. The next question propounded related to the advertisement of hearings on the ordinances, and the court ruled that the record would be the best evidence.

In the absence of a showing to the contrary, we consider the record sufficient to sustain the ordinance, and the statement of the court in the case of Magnolia Petroleum Co. v. Wright, 124 Okla. 55, 254 Pac. 41, appropriate to the case at bar. It was there said:

"The ordinance was pleaded and introduced in evidence. It seemed to be regular on its face as to approval. Therefore, the exis-

tence, and not the nonexistence of the necessary facts to sustain its validity, is presumed, in the abence of evidence to the contrary."

See, also, Crosslin v. Warner-Quinlan Asphalt Co., 71 Okla. 286, 177 Pac. 376.

"The mere absence of an affirmative showing on the record of the passage of an ordinance does not establish that the rules of the city were violated in the passage of the ordinance. When the record is silent, the court will presume that the law of the city has been complied with." Kershaw v. City of Williams (Ore.) 250 Pac. 237.

While it is not specifically urged, it is stated by plaintiff that the court erred in refusing to permit him to show the self-interest of certain members of the council as a motive and inducement in the passage of the ordinance in question. A similar question was disposed of in the case of Finkelstein v. City of Sapulpa, 106 Okla. 297, 234 Pac. 187, wherein it was said:

"The motive of a member of a city commission in voting for the enactment of an ordinance declaring a junk yard in a residential district of the city a nuisance cannot be inquired into for the purpose of determining the validity of the ordinance."

Plaintiff further contends that the zoning ordinance No. 150 was confiscatory, discriminative and in violation of the Constitution of the state and of the United States, in that the same deprived him of his property without due process of law and of the equal protection of the law.

The class of ordinance in question here is of recent origin in this state, it being enacted under the specific authority and provisions of House Bill No. 204, chapter 178, Session Laws 1923, p. 301. The first section of the bill reads:

"For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes."

We have read the ordinance in question, but have not examined the same in detail or attempted to analyze, consider, and approve or disapprove the same as a whole, it being lengthy, nor do we here pass upon or consider its validity except such part thereof as is questioned and applicable to the rights and interest of the plaintiff. The ordinance in part, as authorized by section 2 of the state law, divides the city into four districts and restricts the repair, alteration or use of buildings or structures therein to certain classes or kinds of business. The particular portion or section of the ordinance directly affecting plaintiff's property, and restricting his use thereof for a filling station, is section 3, which classifies the property under the heading:

"Retail Business and Light Manufacturing U-3-Use (21) Oil filling stations and garages, except on Grand Avenue from east side of Fifteenth Street to west side of Sixth Street, from which territory garages and filling stations are specifically excluded."

The retail business and light manufacturing district, as fixed by another paragraph, comprises and is limited to a territory of approximately eleven blocks of the city. Plaintiff's property, lot 34, block 33 of the original town of Frederick, faces upon Grand avenue, and is within the specific territory in which filling stations are prohibited. Plaintiff acquired the property from the liquidating agent of the Oklahoma State Bank, and the brick building on his lot had previously been used and occupied by such bank. The lot is located on the northwest corner of the block at the intersection of Grand avenue and Tenth street, or Main street, as it is referred to on the map, and is within the fire limits of the city.

There was evidence to the effect that Grand avenue was the principal business street of the city; that it had the heaviest traffic; that the business portion of the city and in which the largest number of people congregate was on Grand avenue between the west side of Eighth street and the east side of Tenth street or Main street; that Tenth or Main street was one of the main traveled streets; two blocks east of Main street was located a public school building; that considerable number of pedestrians, including school children and other traffic, passed plaintiff's lot. Another portion of the ordinance, which plaintiff complains of as being invalid, discriminatory and creating a monopoly, is section 10, entitled "Non-Conforming Uses," and reads in part:

"Nonconforming uses existing at the time of the passage of this ordinance may be continued. A nonconforming use shall not be extended except as authorized by the preceding section, but the extension of a use of a portion of a building, which portion was arranged or designed for such nonconforming use at the time of the passage of this ordinance shall not be deemed the extension of a nonconforming use. * * *"

Further provisions of the same section

limit the extent and value of repairs to buildings devoted to nonconforming uses. The effect of such section of the ordinance is to permit the continuation of a business that was established at the time of the passage of the ordinance, even though it may be within the prohibited uses.

The record discloses that there were, at the date of the passage of the ordinance and on the trial of the cause, two drive-in filling stations, of the character sought to be installed and operated by the plaintiff, located within the prohibited district, which apparently came within the exception provided for under section 10 of the ordinance. The two stations were located east of plaintiff's property and upon the north or opposite side of the street. There apparently were no stations of the character sought to be installed by plaintiff located at any point on Grand avenue between the east side of Main street and the west side of Sixth street, nor any located on the south side of Grand avenue between the west side of Sixth street and the east side of Twelfth street.

So far as we are informed, this court has not heretofore been called upon to pass upon the validity of a zoning ordinance, such as is here involved. While the zoning law and ordinances of the character here involved are of recent origin in this state, yet we find the subject thoroughly discussed and the questions here raised passed upon by a number of state courts, as well as by the Supreme Court of the United States. The Supreme Court of the United States, in the case of Village of Euclid v. Ambler Realty Co. (Ohio) 272 U. S. 365, 47 S. Ct. 114, has set at rest the question of the rights of cities to enact such legislation. In that case it was said in part:

"Building zone laws are of modern origin. They began in this country about 25 years ago. Until recent years, urban life was comparatively simple, but with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation."

Plaintiff cites: Crowley v. West (La.) 78 Am. St. Rep. 355; Tugman v. Chicago, 78 Ill. 409; Weadock v. Judge (Mich.) 16 Ann. Cas. 720; Ex parte Bohen (Cal.) 47 Pac. 55; and says that while the cases, strictly speaking, do not involve the zoning ordinances, they do involve the same principles. The rule announced in the Louisiana and Illinois cases cited appear to have been modified or changed under much more recent decisions. We refer to the case of State ex rel. Civello v. New Orleans, supra, and City of Aurora v. Burns (Ill.) 149 N. E. 784. The case of Pacific Palisades Ass'n v. City of Huntington Beach (Cal.) 237 Pac. 538, was also cited by plaintiff. The appeal arose in that case from the ruling of the court sustaining a demurrer to plaintiff's petition, which petition alleged in part that under a zoning ordinance, the plaintiff was prohibited from drilling oil wells upon his property while other owners having property similarly situated were not so restrained. The appellate court in that case held under the allegations stated that the petition alleged a cause of action, and remanded the case for trial on its merits. We do not consider the facts there alleged analogous to the instant case. A number of other cases were cited by plaintiff, some of which reach conclusions denying the right of a city to enact a general zoning ordinance upon the ground that the city is without specific authority from the state; that the general law of the state does not authorize such legislation; while some hold, under the particular wording or provisions of the ordinance, that such enactments and legislation are in violation of the federal as well as state Constitutions. Whatever may be the reason given for sustaining or holding invalid the ordinance in each particular case, we find the majority holding and more recent trend of the decisions to sustain and uphold municipal enactments of zoning ordinances and a liberal view toward them. In some instances the state courts in later decisions have reversed their former decisions holding the other way, as is so stated by the Supreme Court in the Euclid v. Ambler Co. Case, supra.

In addition to the decisions herein referred to from the Supreme Court of the United States, the following cases will be found to contain extensive and well-considered discussions of zoning ordinances:

Miller v. Board of Public Works of City of Los Angeles (Cal.) 234 Pac. 381; Zahn v. Board of Public Works of City of Los Angeles (Cal.) 234 Pac. 388; Ware v. City of Wichita, supra; West v. City of Wichita (Kan.) 234 Pac. 978; City of Stockton v. Frisbie (Cal.) 270 Pac. 270; State ex rel. Civello v. New Orleans, supra.

The question raised in the instant case, relating to that part of the ordinance which excepted from its operation certain nonconforming business, such as the two filling stations which were in existence at the time of the enactment of the ordinance, has been discussed in cases arising in other jurisdictions, some of which reached the Supreme Court of the United States. The case of Hadacheck v Sebastian (Cal.) 239 U. S. 394, which involved the question of the right of the city of Los Angeles to prohibit the operation of a brick manufacturing plant by plaintiff while permitting a similar plant to operate elsewhere in the city, reached the Supreme Court of the United States, which court sustained the holding of the state court upholding the validity of the ordinance.

The case of Zahn v. Board of Public Works of City of Los Angeles, supra, likewise was appealed to the Supreme Court of the United States, and is found in 274 U. S. 325. The federal court sustained the holding of the state court. In the Zahn Case the Supreme Court of California held:

"(6) It is not necessary for the purpose of establishing zoning districts that existing uses shall be removed"

—and in the body of the opinion, referring to the ordinance, stated:

"The ordinance was enacted with the purpose of directing the present and future development of the city, and no attempt was made to remold its past development. To have required, preliminarily to an enactment for future development, that all past development, not in harmony therewith, should be removed, might be impracticable. That the council did not attempt such a task has no tendency to show discrimination against property to be developed in the future.

"The power of the city council to zone is not limited in our opinion to the protection of established districts. To so hold would be to defeat in a large measure the very purpose of zoning, which is to control future development in the best interest of the city. Zoning in its best sense looks, not only backward to protect districts already established, but forward to aid in the development of new districts according to a comprehensive plan having as its basis the welfare of the city as a whole."

"Zoning ordinances permitting continua-

tion of existing uses of property held not void, power to zone not being limited to protection of established districts." A. C. Blumenthal & Co., Inc., v. Cryer et al. (Cal.) 236 Pac. 216.

The Supreme Court of the United States, in the case of Gorieb v. Fox, 274 U. S. 603, upheld the validity of an ordinance of the city of Roanoke, Va., it being there contended that the provisions of the ordinance did not operate uniformly in requiring all property owners to set back a certain distance from the street, and exempted existing houses in the block. The Supreme Court in the syllabus said:

"Reservation of authority in a city council to make exceptions, in cases of exceptional hardship, from a regulation confining the construction of buildings to a building line set back from the street, does not violate the equal protection clause. Arbitrary or unfair use of such authority is not to be presumed."

"The building zone ordinance of the city of Aurora * * * permits lawful uses of buildings at the time of the passage of the ordinance, although not in conformity with its provisions to continue thereafter. This exception is made so that the ordinance shall not have a retroactive operation. It would be manifestly unjust to deprive the owner of property of the use to which it was lawfully devoted when the ordinance became effective. Fire limits are established within which the subsequent erection of wooden buildings is prohibited, yet existing wooden buildings are permitted to remain." City of Aurora v. Burns (Ill.) 149 N. E. 784.

This court has, in several opinions, while not involving a zoning ordinance but similar principles, indicated the trend of its holding in cases involving to some extent similar principles and questions. In Ex parte Tindall, 102 Okla. 192, 229 Pac. 125, this court said:

"The term 'police power' comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal, and protection of the public interests.

"It is plastic in its nature and will expand to meet the actual requirements of an advancing civilization and adjust itself to the necessities of moral, sanitary, economic, and political conditions.

"No principle in our system of government will limit the right of government to respond to public needs and protect the public welfare."

"The court ought to be very cautious in declaring a municipal ordinance unreasonable, there being a peculiar propriety in per-

mitting the inhabitants of a municipality to determine what rules are necessary for their own local government. This is peculiarly true with reference to the police power. * * *" Magnolia Petroleum Co. v. Wright, 124 Okla. 55, 254 Pac. 41.

See, also, City of Muskogee v. Morton, 128 Okla. 17, 261 Pac. 183.

From an examination of the entire record in this cause, we conclude that the ordinance in controversy is valid and cannot be held to be an unreasonable and discriminatory exercise of police power and unconstitutional; that the record sustains the judgment of the trial court and the same is affirmed.

BENNETT, REID, FOSTER, and HERR, Commissioners, concur.

By the Court: It is so ordered.