## CITIES SERVICE OIL CO. v. ROBERTS.
### No. 720.

Circuit Court of Appeals, Tenth Circuit.
Jan. 5, 1933.

Warren T. Spies, of Bartlesville, Okl. (James W. Finley and Hayes McCoy, both of Bartlesville, Okl., on the brief), for appellant.

L. F. Roberts and Ralph A. Barney, both of Pawhuska, Okl., for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

McDERMOTT, Circuit Judge.

The chancellor below, at the instance of the owner of an adjacent home, enjoined the use of a corner lot for filling station purposes. The oil company appeals on the ground that the facts specifically found do not warrant the conclusion drawn.

The appellant purchased a residence property in the town of Pawhuska, which has a population of around 5,000 people, but which has no zoning ordinance. The oil company proposed to wreck the residence and garage on the lots purchased and erect thereon a modern fireproof filling station, with the necessary drives, buried tanks, and pumps, and procured a building permit therefor from the city officials. As planned, the station would be 35 feet from appellee's property. After a trial and an inspection of the premises, the chancellor found:

"6. The neighborhood in which plaintiff's residence is located is in general a residential district. Main Street upon which these properties front, is located a block from and parallel with the Midland Valley railroad right of way through the city. There is a lumber yard located directly across the street south from the defendant's property, the office facing Main Street, which extends to the right of way. A small boiler works is located a little over half a block south, and across the street from the lumber yard. The exclusive business section starts about three blocks west and two filling stations are located on the second intersection west. A filling station is located a long block east, and south from that station there is an area given up largely to oil storage tanks and similar industries.

"7. Main Street running in front of the properties of interest is the United States highway, the principal street of the city, and carries most of the traffic entering the city from the south and east.

"8. The necessary operation of the proposed filling station however carefully conducted, will through the stopping and starting of the cars of customers and the services necessarily performed and incident to the operation of such station, result in noise and confusion which, together with all the other incidents necessary to the operation of a filling station, will substantially disturb plaintiff's enjoyment of his own property for residential purposes."

The record supports these findings. Residential districts are not as extensive or exclusive in small towns as in large cities. This residential street is a block removed from the railroad tracks which parallel it; commercial enterprises fronting on the railroad can be eliminated from consideration. The photographs show that the street in question is one of modest homes, set well back from the sidewalk, surrounded by grass lawns and shade trees. This typical district of comfortable homes in a small town extends for three long blocks; at each end of this district there is now a filling station; at one end there was, when the case was tried, a miniature golf course; across the street from the corner in question is a bungalow which is used as the office of a lumber yard. The finding that this is "in general a residential district" is conservative. As small towns go, the evidence supports a finding that it is a small but exclusive residence district.

In the exact center of this district, the appellant proposes to tear down a home and conduct its commercial enterprise. The appellee magnifies the dangers incident to filling stations; but that they are commercial enterprises, attended with annoyance and noise and confusion and odors, is attested by the knowledge which all men possess, and by the fact that many cities and towns exclude them from residential sections by ordinance. Conceding, as is claimed, that the better way of handling the problem is by ordinance, the fact remains that it is a problem which may demand the attention of a court of equity. When appellant acquired this property, it

knew that it was proposing to embark in an inherently annoying business in the heart of a residential section; it knew, or could have ascertained, the traditional power of equity to protect adjacent landowners from the maintenance of a nuisance; it took its chance on the outcome. The erection of another filling station cannot be justified on the ground of a superior public need.

It is said that Hazlett v. Marland Refining Company (C. C. A. 8) 30 F.(2d) 808, 810, is opposed. On the contrary, it supports. That opinion distinctly recognizes the power of the courts to grant relief in proper cases, and anticipates this case by saying:

"What might be regarded as a nuisance in a purely residential district might be looked upon as a necessary and useful convenience in a district given over to commercial pursuits and places for public gatherings."

It was held that the location there involved was not strictly a residential district; and it was not. It was a district given over largely to churches and schools, a public library, a convention hall, and a grocery store. This presents quite a different situation from invading a district where men and women repair for rest and relaxation from their daily toil.

Section 7870, C. O. S. 1921, provides:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either: First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or, * * * Fourth. In any way renders other persons insecure in life, or in the use of property."

The Oklahoma Supreme Court has applied this statute to the operation of filling stations under a variety of circumstances. McPherson v. First Presbyterian Church, 120 Okl. 40, 248 P. 561, 51 A. L. R. 1215; Magnolia Pet. Co. v. Wright, 124 Okl. 55, 254 P. 41; Champlin Ref. Co. v. Dugan, 133 Okl. 20, 270 P. 559. In other cases, the question was decided upon general grounds. Texas Company v. Brandt, 79 Okl. 97, 191 P. 166; Ferriman v. Turner, 99 Okl. 277, 227 P. 443; Marland Refg. Co. v. City of Hobart, 113 Okl. 36, 237 P. 857; City of Muskogee v. Morton, 128 Okl. 17, 261 P. 183. In Magnolia Pet. Co. v. Wright, supra, the court enjoined the construction of a filling station in a residential district; this statement in the syllabus has since been quoted and followed by that court:

"The court will take judicial notice that the mechanism of gasoline motors operates on the principle of explosion, and that such explosions and other unusual noises are made by stopping and starting of gasoline motor vehicles, and that such noises ordinarily are distinctly audible for a distance greater than 100 feet."

Since every case depends largely upon its own facts, it is difficult to say categorically what the law in Oklahoma is; but we are of the opinion, shared by appellant's counsel when this cause was removed from the state court, that the injunction granted herein is in accord with the decisions of the Oklahoma Supreme Court. While we do not discern any conflict between the state and federal decisions, if conflict there is, the state law as to the enjoyment of Oklahoma real estate is controlling. Two circuits have so decided, in cases brought by landowners to enjoin or recover for a nuisance on abutting property. Sullivan v. American Mfg. Co. (C. C. A. 4) 33 F.(2d) 690; Smith v. Staso Milling Co. (C. C. A. 2) 18 F.(2d) 736. This is in accord with the general rule that rights appurtenant to real estate involve questions of local law and are to be resolved by state statutes and decisions. Waggoner Estate v. Wichita County, 273 U. S. 113, 47 S. Ct. 271, 71 L. Ed. 566; Port of Seattle v. Oregon & W. R. R., 255 U. S. 56, 63, 41 S. Ct. 237, 65 L. Ed. 500; Guffey v. Smith, 237 U. S. 101, 113, 35 S. Ct. 526, 59 L. Ed. 856; Mullins Lumber Co. v. Williamson & Brown L. & L. Co. (C. C. A. 4) 255 F. 645; Thorley v. Pabst Brewing Co. (C. C. A. 2) 179 F. 338, certiorari denied 219 U. S. 583, 31 S. Ct. 469, 55 L. Ed. 346. In the last two cases, it was held that state decisions, as to the measure of damages to real estate, are controlling in courts of the United States.

This rule is not only sustained by the decided cases, but it is in harmony with the fundamental principle that should govern where there are two sovereignties over the same territory. If the rule were otherwise, a foreign corporation could erect filling stations on locations forbidden to citizens of Oklahoma. That would be a bizarre result, not consistent with the right of a sovereign state to regulate, within federal constitutional limits, the use of real estate within its borders, and opposed to the decision of the Supreme Court of the United States that a state may declare what use of real estate is a nuisance to the neighbors. Northwestern Laundry v. Des Moines, 239 U. S. 486, 36 S. Ct. 206, 60 L. Ed. 396.

The decree is supported by the evidence, and is

Affirmed.