## Ladies' Decorative Art Club's Appeal.

A man has no right to bring a noisy trade or business into a neighborhood exclusively occupied by dwelling houses and to create there noises which destroy the peace and comfort of the occupants of those houses. If he does so, such occupants may maintain an action for damages against him, or, if the evil is of a character not to be compensated by damages and requiring speedy abatement, they may obtain an injunction to prevent the continuance of the nuisance.

The noises produced in the course of instruction in metal chasing and wood carving by a school of decorative art for women, if loud enough to be heard in the adjoining houses, and made at intervals during a considerable portion of the day and occasionally in the evening, and if of a character to affect the peace and comfort of a man's household or to interfere with the comfortable enjoyment of his home, are inappropriate to a neighborhood composed entirely of closely built dwelling houses, and will be restrained by preliminary injunction as a nuisance at the suit of one who, without previous knowledge of the noise, buys and moves into the adjoining house after the school has been in operation for five years.

It is immaterial that the school is conducted without pecuniary profit to its managers, to encourage education in these branches of industrial art, and that, because it cannot be carried on successfully except near the homes of its patrons, the effect of the injunction will be to put an end to its work.

(Argued March 27, 1888. Decided April 23, 1888.)

NOTE.—Equity will enjoin the carrying on of a business resulting in injury to health, by noise, where conducted in a populous neighborhood. Dennis v. Eckhardt, 3 Grant Cas. 390; Briggs v. Vottler, 4 W. N. C. 272; Schandein v. Bach, 11 W. N. C. 202; Rodenhausen v. Craven, 141 Pa. 546, 23 Am. St. Rep. 306, 21 Atl. 774. But if the annoyance is merely incidental to the business, and occurs in a manufacturing neighborhood, it will not be enjoined. Straus v. Barnett, 140 Pa. 111, 21 Atl. 253.

January Term, 1888, No. 219, E. D.    All the Judges pres-
ent.   Certiorari sur appeal from a decree of Common Pleas No.
4 of Philadelphia County granting a preliminary injunction,
December Term, 1887, No. 41.    Affirmed.

Reported below, Dallas v. Ladies' Decorative Art Club, 4 Pa.
Co. Ct. 340.

The bill was filed by George M. Dallas.

The defendant below, appellant, was incorporated in 1882,
for the purpose of enabling women to learn various industrial
arts, and has ever since been furnishing instruction to women in
painting, modeling, wood carving, metal chasing, and designing
in all its branches, at 1512 Pine Street, Philadelphia.

Upon granting the preliminary injunction THAYER, P. J., de-
livered the following opinion, in which the facts are stated:

The facts upon which the motion for a special injunction in
this case is based, as they are set forth in the plaintiff's bill and
in the affidavits filed, are as follows:

In March, 1887, the plaintiff became the purchaser of
the four-story dwelling house No. 1514 Pine street, as a
dwelling and home for his family.   After the purchase, he
expended $4,000 upon it in improvements and alterations.   His
family moved into the house in September, 1887.   The house
is one of a row of twenty similar dwelling houses extending
from Fifteenth to Sixteenth streets on the south side of Pine
street.   The defendants are tenants of the house No. 1512 Pine
street, adjoining the plaintiff's residence on the east.   The plain-
tiff complains that he and his family are constantly annoyed and
distressed by loud noises, as of pounding and hammering, pro-
ceeding from the house occupied by the defendants.   These
noises, it appears, are occasioned by the beating of brass in the
process of metal chasing and the prosecution of work in the art
of wood carving.   These noises are, according to the plaintiff's
statement, exceedingly disturbing and distressing.

The plaintiff has been compelled at times to abandon a room
in his house used as a reading room, on account of his inability
to read there by reason of these noises, and sometimes he has
quitted the house to seek relief in the open air from headache
and annoyance caused by the noises complained of.   The noises
are such as to interfere with conversation, reading, and the usual
enjoyments of home.   Very recently, while the plaintiff's son

was lying dangerously ill with typhoid fever in the second-story front room of his house, these noises penetrated the sick chamber, and of course greatly added to the anxiety and fears of the plaintiff and his wife for the safety of their son. The noises are heard in all parts of the plaintiff's house nearly every day of the week, except Sunday, and sometimes in the evening as late as 9 o'clock. The result of it all is that the comfort and quiet of the plaintiff's home are greatly disturbed, and the plaintiff and his family much distressed and annoyed, to which is added the constant apprehension of danger in case of illness in the family. The family residing on the other side of the defendants is, it appears from affidavits filed, equally disturbed by these noises, which they declare are loud and distressing. The members of that family, like the plaintiff's, have, according to their sworn statements, been constantly and greatly annoyed and disturbed by them, and in constant apprehension of the evil consequences which might arise from them in case of sickness.

The plaintiff's statements are corroborated by the affidavits of seven witnesses, including those of his family physician and the nurse who attended the plaintiff's sick son; and they leave no room to doubt that the noises amount to an egregious private nuisance, rendering the lives of the residents of the adjoining houses uncomfortable and at times painful, depriving them of the reasonable quiet and enjoyment of their homes, and exposing them in case of illness to serious danger.

The affidavits filed on behalf of the defendants constitute no sufficient denial or answer to the plaintiff's charges. The fact that the number of pupils engaged at one time in beating brass and in wood carving does not, as the defendants say, exceed twelve, does not disprove the plaintiff's statements or necessarily reduce the noise to an inappreciable volume. It is quite obvious that the exertions of twelve people working simultaneously with the punches, hammers, mallets, gouges, and chisels, described in the defendants' affidavits, upon such materials as brass and wooden blocks, would be quite competent, not only to disturb the profound repose of that neighborhood, but to produce all the din and disturbance of which the plaintiff complains.

The defendants say in their affidavits that there are only two hours of lessons in metal carving during the week, and four hours of lessons in wood carving during the week; but they carefully abstain from saying that the pupils do not work in other

hours than those in which lessons are given to them.    Neither is it an answer to say that they do not work in the evenings, except Tuesday evenings.    Tuesday evening belongs to the plaintiff and his family as well as to the defendants, and is as much their property as Monday evening or any other evening of the week.·· The membership of the club consists of about 100 persons, and, according· to the defendants' affidavits, over one third of the total number of pupils are engaged in metal working and wood carving, the arts which produce the noises.    This shows a 'very considerable capacity for the production of noise, and sufficiently accounts for the grievance of which the plaintiff complains.    Nor does it alter the case that these industrial arts are.of great·importance, or that the institution is conducted, not for the .purpose of gain, but·as a sort of fine art charity, or ·that the lessons are given by the club instructors upon very moderate terms and for the purpose of disseminating knowledge of the arts.. .

It is clear enough that the objects of the club are most· com-. mendable.    The. names of the patrons of the club are a sufficient guaranty that they. would not intentionally.set up an institution which ·would be an annoyance to their .neighbors or make their home. existence miserable.    Other arts, it. appears, are taught upon the premises by the club, which inconvenience no one, such· as. painting, modeling, sketching, china painting, decorative painting, water color painting, etc.    But it· was undoubtedly. a great mistake for the defendants to locate the business of metal working and wood carving in a neighborhood consisting.entirely of dwelling houses, where the prosecution. of these arts could not but bring discomfort and misery to their neighbors.    If ·those arts are necessary for ·the accomplishment of the ·purposes which the·club has in view, a room for  them should have been. selected in some locality where they would not bring personal discomfort and unhappiness to others.

The law upon the subject is well settled and very plain. Where a· noisy nuisance is complained of it is a question of· degree and locality.    If the noise is only slight and the inconvenience merely fanciful, or such as would only be complained of by people of elegant and dainty modes of living, and inflicts no serious or substantial discomfort, a court of equity will not take cognizance of it.    No one has a right to complain that his next-door neighbor plays upon a piano at reasonable hours, or of the cries of· children in his neighbor's nursery, nor of any of the

ordinary sounds which are commonly heard in dwelling houses. On the other hand, if unusual and disturbing noises are made, and particularly if they are regularly and persistently made, and if they are of a character to affect the comfort of a man's household, or the peace and health of his family, and to destroy the comfortable enjoyment of his home, a court of equity will stretch out its strong arm to prevent the continuance of such injurious acts.

In regard to such a question I may say with the master of the rolls, Sir GEORGE JESSEL, in Broder v. Saillard, L. R. 2 Ch. Div. 692: "If there were no authority in the question, I should have felt no difficulty about it, because I take it the law is this— that a man is entitled to the comfortable enjoyment of his dwelling house. If his neighbor make such a noise as to interfere with the ordinary use and enjoyment of his dwelling house, so as to cause serious annoyance and disturbance, the occupier of the dwelling house is entitled to be protected from it. It is no answer to say that the defendant is only making a reasonable use of his property, because there are many trades and many occupations which are not only reasonable but necessary to be followed, and which still cannot be allowed in the proximity of dwelling houses so as to interfere with the comfort of their inhabitants."

A man has no right to bring a noisy trade or business into a neighborhood exclusively occupied by dwelling houses, and to create there noises which destroy the peace and comfort of the occupants of those houses. If he does so, the occupants may maintain an action for damages against him; or, if the evil is of a character not to be compensated by damages and requiring speedy abatement, a court of equity will, without hesitation, stretch out its hand and prevent the continuance of the nuisance by writ of injunction.

There are numerous places in which a noisy occupation can be carried on without detriment or discomfort to other people. If such a business is brought into a neighborhood consisting exclusively of dwelling houses, and it is carried on in such manner that great personal discomfort and continual annoyance are occasioned thereby, those who suffer the injury are entitled to equitable relief against it. This is so well settled by our own, as well as by the English, decisions that there is no necessity to appeal here to the books and the cases upon the subject. But the law was so clearly defined in regard to such injuries by Lord

Chancellor Selborne in the case of Ball v. Ray, L. R. 8 Ch. 471, and his opinion is so applicable to the present case, that it will not be superfluous or inappropriate to repeat the language used by him in that case. "If," says he, "the houses adjoining each other are so built that from the commencement of their existence it is manifest that each adjoining inhabitant was intended to enjoy his own property for the ordinary purposes for which it and all the different parts of it were constructed, then so long as the house is so used there is nothing that can be regarded in law as a nuisance which the other party has a right to prevent. But on the other hand, if either party turns his house, or any portion of it, to unusual purposes in such a manner as to produce a substantial injury to his neighbor, it appears to me that that is not, according to principle or authority, a reasonable use of his own property, and his neighbor showing substantial injury is entitled to protection."

This well-settled doctrine has a strong application to the present case; for here the defendants, having rented a dwelling house in the midst of a square exclusively devoted to dwelling houses, have set up a business therein which is clearly injurious to their neighbors on either side of them, depriving them of that comfort and quiet which every man has a right, under such circumstances, to expect in his dwelling. The plaintiff had no reason to suppose, when he bought an expensive dwelling house in a locality which was occupied exclusively by dwellings, that he and his family were to be subjected to the discomfort, not to speak of more serious consequences, which are quite possible, arising from loud and continuous noises occasioned by the hammering of brass and wood.

I have said that the defendants' affidavits contain no sufficient denial or answer to the facts sworn to by the plaintiff's witnesses. It is true that Mr. Brush, who sold the plaintiff the house in which he lives, says in a brief affidavit that he was not seriously annoyed by the noises complained of while he resided there. Perhaps that is the reason why he was silent about the noises when he sold to the plaintiff. It is certain that he did not mention these noises to the plaintiff before he sold his house to him, and the witness may possibly be so constituted as not to be easily troubled by noises of any kind. Mr. Heller, who teaches the languages for a certain time every day in the front parlor of the house occupied by the defendants, also says that he has not been troubled by the noises complained of. But Mr.

Heller might be of quite a different opinion, perhaps, if he dwelt with a family in the house occupied by the plaintiff. The facts clearly and definitely set forth in the eight affidavits filed by the plaintiff are not materially controverted or weakened by the defendants' affidavits, and the weight of evidence greatly preponderates in the plaintiff's favor. Under these circumstances, the court regards the plaintiff as entitled *ex debito justitiæ* to the special relief which he prays for.

A writ of injunction is accordingly awarded, as prayed for in the bill.

The assignment of error specified the action of the court in granting the special injunction.

*Thomas Reath* and *Frederick M. Leonard*, for appellant.— The sole foundation for a preliminary injunction is, in addition to cases of the invasion of unquestioned rights, the prevention of irreparable mischief or injury. Mammoth Vein Consol. Coal Co.'s Appeal, 54 Pa. 183; Brown's Appeal, 62 Pa. 17; Minnig's Appeal, 82 Pa. 373.

Irreparable mischief or injury was not threatened. The noise is not shown by the affidavits to have caused any physical injury to the plaintiff's property or to have affected in the least the health of the family. The defendants have occupied the same premises in the same way for several years. During that time, no other attempt has been made to interfere with their work.

Equity has refused to interfere by preliminary injunction to stop a steam hammer, although the blows of the hammer rocked the plaintiff's house and kept his family from sleeping at night (Eaden v. Firth, 1 Hem. & M. 573); the operation of soap and candle works, which emit noxious vapors and smoke causing a nuisance to complainant (Radenhurst v. Coate, 6 Grant Ch. [U. C.] 139); the erection of telegraph poles in the street in front of the plaintiff's house (Roake v. American Teleph. & Teleg. Co. 41 N. J. Eq. 35, 2 Atl. 618); the opening of sluiceways in a milldam (Wing v. Fairhaven, 8 Cush. 363); the mining of coal in such a way, not immediately threatened, as to interfere with the working of the plaintiff's mine (Mammoth Vein Consol. Coal Co.'s Appeal, 54 Pa. 183); the destruction of a milldam—pending litigation (Akin v. Davis, 14 Kan. 143); the removal of a boundary fence—pending an

action of ejectment (Minnig's Appeal, 82 Pa. 373); the removal of county offices to an alleged newly chosen county seat on the ground of fraud in the election at which the new county seat was to be chosen (Conley v. Fleming, 14 Kan. 381); the use of a private dock as a landing place (New York Printing & Dyeing Establishment v. Fitch, 1 Paige, 98); a diversion of coal shipments—when the terms of the contract under which the plaintiff claims the coal are disputed (Brown's Appeal, 62 Pa. 17); the practice of medicine in a particular town by a physician, in violation of his contract (Mandeville v. Harman, 42 N. J. Eq. 185, 7 Atl. 37); the operation of a line of railroad by the defendant in possession under claim of right and the interference of the defendant with the future operation of the road by the plaintiff (Farmers' R. Co. v. Reno, O. C. & P. R. Co. 53 Pa. 224).

In Harrison v. St. Mark's Church, 12 Phila. 263, MERCUR, PAXSON, and STERRETT, JJ., held that it was not a proper case for a preliminary injunction; whereupon the point was waived by agreement of the parties, and the case was argued and decided as if upon final decree.

The plaintiff's rights were not unquestioned.

The learned judge who delivered the opinion of the common pleas, after stating the plaintiff's case in full as set out in his bill and affidavits, said that the defendants' affidavits constituted no sufficient denial or answer to the plaintiff's charges.

Had the only charge been that the defendants caused noise in the course of their instruction in wood carving and metal chasing, no exception could be taken to this conclusion on the part of the court below, for the defendants do not pretend that their work is noiseless.

But the gravamen of the plaintiff's charge is that the noise made by the defendants is a nuisance.

This charge the defendants met by affidavits to establish the following:

The defendants have for five years occupied, without interference, the same house with the same kind of work, and have, during much of that time, made far more noise than at the time the bill was filed; no wanton or unnecessary noise was ever made, and every precaution was taken to diminish noise; the defendant's work was not of a trivial or useless character, but was thoroughly practical, and an important element in indus-

trial education; the character, volume, and duration of the noise were not such as to make it a nuisance.

Before the court can condemn a trade or calling, it must appear that it cannot be carried on without working injury or hurt to another; and that injury or hurt must be such as would affect all reasonable persons alike similarly situated. Westcott v. Middleton, 43 N. J. Eq. 478, 11 Atl. 490. See also Price v. Grantz, 118 Pa. 402, 4 Am. St. Rep. 601, 11 Atl. 794.

The mere accumulation of affidavits to the effect that the noise is audible outside the defendants' studios cannot, for the purpose of a preliminary injunction, overcome the less numerously supported denial of the defendants. McCaffrey's Appeal, 105 Pa. 253.

The question, What noise constitutes a nuisance? is a question of degree and locality.

Equity has on final hearing refused injunctions to restrain the erection of a felt roofing factory among residences (Adams v. Michael, 38 Md. 123, 17 Am. Rep. 516); the operation of a grist mill among residences, run by steam engine, and said to be "painful to the ear when well, and when sick almost intolerable" (Green v. Lake, 54 Miss. 540, 28 Am. Rep. 378); the running of machinery of a marble yard next to dwelling houses, which caused jarring vibration and cracking of walls and great noise (Goodall v. Crofton, 33 Ohio St. 271, 31 Am. Rep. 535); the further erection of a planing mill adjoining plaintiff's residence (Dorsey v. Allen, 85 N. C. 358, 39 Am. Rep. 704); the machinery of a silk mill adjoining plaintiff's residence (Gaunt v. Fynney, L. R. 8 Ch. 13); the operation of a factory which had been in operation among residences for seven years—on the ground that the smoke, soot, and cinders were a nuisance (Louisville Coffin Co. v. Warren, 78 Ky. 400); the running of printing presses day and night, although some twenty of the neighboring residents made affidavit that the noise therefrom was "an intolerable crashing noise" which prevented their sleeping at night and rendered their houses uncomfortable by day; this, although the master reported in favor of granting the injunction (McCaffrey's Appeal, 105 Pa. 253). The work of the school, owing to its peculiar nature, was not rendered a nuisance by its location. Ball v. Ray, L. R. 8 Ch. 471; Broder v. Saillard, L. R. 2 Ch. Div. 692, were before this court in McCaffrey's Appeal, and an injunction was nevertheless refused.

The plaintiff was given, by the sign at the defendant's door, an opportunity to inquire and ascertain the character of the defendants' work before buying his house. Having neglected to do so, he cannot reasonably complain that the work is not what he supposed it to be.

This injunction, if affirmed, will work irreparable injury to the defendants by breaking up their classes in wood carving and metal chasing and compelling them, for want of sufficient support in other branches, to abandon their work.

In the cases in Pennsylvania where noise has been specially enjoined, the circumstances have been very aggravated—as, by loud noise made continuously during the whole of every day, except Sunday, e. g., gold beating from 7 A. M. to 6 P. M. (Wallace v. Auer, 10 Phila. 356); or at unusual hours, disturbing rest; sheet iron working from daylight to 8 A. M., and from 8 P. M. till 11 P. M., in frame building in rear of defendant's house, 8 feet from plaintiff's sleeping room—work in shop was enjoined absolutely, but as to the rest of the house only between 7 P. M. and 6 A. M. (Dennis v. Eckhardt, 3 Grant Cas. 390); stove-polish factory, run day and night, with great and continuous noise and vibration—enjoined between 8 P. M. and 6 A. M. (Burke v. Myers, 10 W. N. C. 481); meat-chopping establishment, run day and night—enjoined between 8 P. M. and 8 A. M. (Dillon v. States, 11 W. N. C. 18); bowling alley in a saloon, used until 2 o'clock in the morning, preventing sleep in plaintiff's house (Briggs v. Vottler, 4 W. N. C. 272).

A person who resides in the center of a large city must not expect to be surrounded by the stillness which prevails in a rural district. He must necessarily hear some of the noise, and occasionally feel slight vibrations, produced by the labor and movement of its people and by the hum of its mechanical industries. The aid of a court of equity may be invoked to keep annoying sounds within reasonable limits. Every noise, however, is not a nuisance; nor, when produced in the exercise of a lawful occupation, should the strong arm of a chancellor necessarily be extended to suppress it. McCaffrey's Appeal, 105 Pa. 253.

*John G. Johnson*, for appellee.—What stronger case could be presented of "irreparable injury" than making sick those who are well, and disturbing, distressing and endangering those who are ill? And how unreasonable is it to say to those who have suffered and survived before they could be heard by the

court, that they must wait until illness overtakes them again before they can proceed? "Disease and age come as certainly in the course of nature as life and health, and are a reason why the court should extend rather than withdraw its protecting arm." Harrison v. St. Mark's Church, 3 W. N. C. 389.

Nuisance is a question of circumstance, of locality, of degree. The sum of the matter is that where the facts are clear, the right established, and the injury a presently existing one, the injunction will be awarded, especially where (as in this case) to these circumstances there is added the fact that no great manufacturing or other interest is involved in restraining the nuisance complained of, but only a fanciful or whimsical pursuit (however unobjectionable in itself), the restraint of which, in the particular locality, involves no serious loss or absolute prohibition.

In Broder v. Saillard, L. R. 2 Ch. Div. 692, a special injunction was awarded. It was held that the continuance of a nuisance is not justified, because it had its inception before the complainant came to the neighborhood; and that noise from a stable which interferes with the enjoyment of a dwelling house is a nuisance.

In Ball v. Ray, L. R. 8 Ch. 471, it is also held that continuance of the thing complained of, for any period less than twenty years, cannot defeat an action or bill for nuisance.

Nor can one who maintains an annoyance in a neighborhood of dwelling houses defend, upon the ground that the complainant's rightful alteration of his own property, or of its use, has made that a nuisance which before was not one, and had existed for very many years. Sturges v. Bridgman, L. R. 11 Ch. Div. 852.

Although the business in which a man is engaged be never so lawful, yet if it occasion injury or loss to his neighbor, he shall answer for it. Nor is he relieved from responsibility by the consideration that he came first to the locality. Smith v. Phillips, 8 Phila. 11.

McCaffrey's Appeal, 105 Pa. 253, which is cited and relied upon by the appellant, was rightfully decided upon its facts. It was shown, beyond question, that the use of the building and presses employed by the defendant in that case, which had been set up at enormous expense, did not injuriously affect the plaintiff.

On the other hand, in Richardson v. Oberholtzer, 2 W. N. C. 332, a special injunction was continued against carrying on a business which produced dust, to the injury of the plaintiff.

In Dennis v. Eckhardt, 3 Grant Cas. 39C, which is referred to by STRONG, J., in Sparhawk v. Union Pass. R. Co. 54 Pa. 410, special injunction was granted against a tin and sheet-iron shop, the noise from which disturbed the complainant and his family.

In Warwick v. Wah Lee, 10 Phila. 160, a special injunction was granted to restrain a laundry so conducted as to injure the trade of complainant in the next story.

The business of gold beating set up in a quiet neighborhood was specially enjoined in Wallace v. Auer, 32 Phila. Leg. Int. 238.

A preliminary injunction to restrain the ringing of the bells of St. Mark's Church, granted by common pleas No. 2 of Philadelphia county (Harrison v. St. Mark's Church, 3 W. N. C. 389), was sustained by this court upon appeal. 34 Phila. Leg. Int. 222.

In Briggs v. Vottler, a special injunction was granted and continued, to restrain noises arising from a bowling alley. 4 W. N. C. 272.

See also, upon the general question of the jurisdiction in equity to restrain the setting up or continuance of nuisances prejudicial to the reasonable enjoyment of the comforts of home, Haugh's Appeal, 102 Pa. 42, 48 Am. Rep. 193; and Pennsylvania Lead Co.'s Appeal, 96 Pa. 116, 42 Am. Rep. 534.

PER CURIAM:

Decree affirmed, at costs of appellant.