## CITY OF MUSKOGEE et al. v. MORTON.

No. 18306. Opinion Filed Nov. 8, 1927.

(Syllabus.)

1. **Municipal Corporations—Power to Prescribe Limits Against Obnoxious Businesses.**

Under authority conferred by section 4562, C. O. S. 1921, cities of this state are authorized to pass ordinances prescribing limits within which no obnoxious and offensive business may be carried on.

2. **Same—Power to Declare Nuisances.**

The Constitution and statutes of this state delegate to cities the power to declare what shall constitute a nuisance, and remove the same. And while this does not empower the municipality to declare a thing a nuisance which is clearly not one, it does empower it to declare anything a nuisance which, by reason of its location or use, or local condition and surrounding, may be or does become a nuisance within the statutory definition of that term. Following Magnolia Petroleum Co. v. Wright, 124 Okla. 55, 254 Pac. 41.

3. **Same—Ordinance Prohibiting Filling Stations in Certain District—Exercise of Police Power—Function of Courts.**

A city having passed an ordinance prohibiting the erection of gasoline filling stations in a certain district, in an action questioning the authority of the city to enforce said ordinance, the trial court sat as a reviewing tribunal to determine whether said ordinance in its application to plaintiff's property rights was in excess of the police power of the city. And this court will so view the question, as the city council, having original jurisdiction in the matter, has, by passage of the ordinance, first determined the question and found such business to be a nuisance when operated in said district.

4. **Same—Validity of Ordinance.**

An ordinance of a city providing that the erection of a gasoline filling station within a certain district of such city, without first obtaining the written consent of the owners of two-thirds of the property estimated by front footage thereof, lying within 300 feet of the proposed station, is not invalid by reason of such provision.

5. **Same.**

An ordinance of a city establishing districts within which gasoline filling stations cannot be constructed and operated is a valid exercise of the police power of such city, and will be upheld when it is not shown that it is unreasonable or arbitrary or without uniformity in its application.

Commissioners' Opinion, Division No. 1.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Action by E. C. Morton for mandamus to be directed to the City of Muskogee et al. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Leahy & Brewster (Guy F. Nelson and Mosier & Mosier, of counsel), for plaintiffs in error.

W. K. Zachry, for defendant in error.

REID, C. The parties to the action will be referred to in this opinion as they stood in the trial court.

The plaintiff, being the owner of two cer-

tain lots in the city of Muskogee, and desiring to erect a gasoline filling station thereon, presented his application for a building permit to the defendant, Clyde C. Poole, building inspector of said city. The permit was denied, and the plaintiff brought action against the inspector and the city of Muskogee.

He alleged that his application was in accordance with the rules and regulations of the city, and in accordance with its valid ordinances, and that it complied with all its ordinances except sections 208 and 209 of the revised ordinances of the city; that said sections of said ordinance were void and not enforceable; were passed without lawful authority; were unreasonable and unjust; and created an unfair discrimination and tended to deprive him of his property without due process of law. He prayed that a writ of mandamus issue directing defendants to issue the permit as requested.

The defendants answered that the lots upon which plaintiff proposed to erect the fil.ing station were within the residential district of the city, and without the fire limits affixed by an ordinance of said city, establishing such fire limits; that the operation of a filling station at the place proposed would be a nuisance and would materially affect the comfort, safety, enjoyment, and use of the property of the owners near the proposed site; that the noise attending the operation of such business, the accumulation of filth, the dropping of grease and oil from cars, storage of gasoline and oil, and the obnoxious odors of poisonous and foul gases arising from cars, and the noise incident to the operation of said business would interfere with the repose, comfort, enjoyment, safety, and use of the inhabitants and residents of said city near the filling station, if it was permitted to be erected and operated at the place proposed; that the ordinances attacked by plaintiff's action are reasonable, valid, and constitutional.

The defendants further answered that the plaintiff had failed to comply with the ordinance of said city, relating to the erection of such stations, in that there did not accompany his application the written consent of the owners of two-thirds of the property, estimated by front footage, lying within 300 feet of the proposed filling stations. but that in fact two-thirds of such property owners had filed written protests against the granting of such permit.

The trial court found generally for the plaintiff, and awarded the writ.

While the city of Muskogee had passed an ordinance which is referred to as one establishing the fire limits of the city, it appears to be in effect an ordinance separating, or attempting to separate, the business and residential districts of the city. After the passage of the fire limits ordinance, the city enacted the ordinances which are assailed in this action, and being necessary to proper.y understand the questions presented by this appeal, we quote them in full as follows:

"Section 207. Construction of Gasoline Service Station, etc., Prohibited without Permit from City Clerk. The construction or installation of any gasoline service station, building, plant, machine or storage place for gasoline. any garage for commercial or public use, repair shop, machine shop or blacksmith shop, within the city of Muskogee, Okla., is hereby prohibited, except upon a permit issued by the city clerk of said city as provided in section 209 hereof.

"Section 208. Regulating Construction outside Fire Limits; Must Obtain Consent Property Owners. The construction, installation or operation of any gasoline service station or gasoline filling station, or of any station, building, plant, machinery, or storage .place for gasoline to be used for or in connection with such gasoline service station or gasoline filling station, or any garage for commercial or public use, repair shop, machine shop, or blacksmith shop within the city of Muskogee, Okla., outside of the fire limits of said city as established by ordinance thereof is hereby prohibited. except with the consent in writing of the owners of two-thirds of the property, estimated by the front footage thereof, lying within 300 feet of the proposed gasoline filling station, garage for commercial or public use, machine shop, except upon the issuance of the permit provided for in section 209 hereof.

"Section 209. Must Obtain License Fee. Upon application to the city clerk of said city by any person, firm or corporation for a permit to erect, install and operate a gasoline service station or gasoline filling station, building, plant. machinery, and storage place for gasoline to be used in connection with such gasoline service station, garage for commercial or public use, repair shop, machine shop or blacksmith shop, and accompanied by a license fee of $5 paid to the said city of Muskogee, if it appears that said plans, specifications and locations are in compliance with this ordinance and other ordinances of the city of Muskogee. the city' clerk shall issue such permit; provided, that if said proposed location is outside the fire limits of the said city of Muskogee, the application for said permit shall be accompanied by the consent in writing of two-thirds of the property owners as provided

in section 207 hereof; otherwise the permit shall be refused."

Let us see if the city council had legislative authority to enact the fire limits ordinance, and to also pass ordinances Nos. 207, 208, and 209, making the latter ordinances applicable to a certain district as fixed by the fire limits ordinance. Section 4562, C. O. S. 1921, provides:

"Protection Against Fire. The council may regulate the construction of, and order the suppression of, and cleaning of, fire-places, chimneys, stoves, stovepipes, ovens, boilers, kettles, forges, or any apparatus used in any building, manufactory, or business, which may be dangerous in causing or promoting fires, and prescribe limits within which no dangerous or obnoxious and offensive business may be carried on."

Eliminating from this section that part inapplicable to the question here presented. we have:

"The council may * * * prescribe limits within which no obnoxious and offensive business may be carried on."

Webster says the words "obnoxious" and "offensive" in their ordinary use are synonymous; meaning "objectionable," "disagreeable," "displeasing," and "distasteful."

The courts have defined the words contained in this statute wherein the parties to the action were owners of property, coming in a chain of title from a grantor who had provided in the conveyance that the properties should not be used for any offensive business or occupation.

In the case of Hibbard v. Edwards (Pa.) 84 Atl. 437, the parties held under deeds containing this restriction. The defendant was about to enlarge to six times its then capacity a small public garage upon his lots, and the plaintiff brought injunction proceedings. On the evidence submitted as to the kind of business, and its effect on adjoining property, the court, after considering the testimony, and in sustaining the injunction granted by the lower court, said:

"The weight of testimony, however, so strongly substantiates the contention of the plaintiffs that we have no doubt that the present garage is and the proposed would be offensive, and mar the comfort and enjoyment of those homes located in the immediate vicinity, and we so find.

"Now the properties owned or occupied by the plaintiffs and defendant were originally a part of a large tract of 348 acres of land owned by the Paoli Heights Land Company, and were conveyed to the present owners under and subject, inter alia, to like conditions, and restrictions as set forth in the deed to the defendant, to wit: 'And the said Ralph Edwards, his heirs and assigns, owners, and occupiers of the said tract of ground, shall not at any time hereafter erect or build or cause, suffer, or permit to be erected or built, upon the hereby granted tract of land, or any part thereof, any tavern, drinking saloon, steam mill, tannery, slaughterhouse, skin-dressing establishment, glue, soap, candle, or starch factory, or other building for offensive purpose or occupation; nor cause, suffer, or permit any building erected on said tract of land to be converted into a tavern, drinking saloon, steam mill, tannery, slaughterhouse, skin-dressing establishment, glue, soap, candle, or starch manufactory, or used for any offensive purpose or occupation hereafter forever.' * * *

"The restriction above quoted is not a residential restriction, limiting the property to residential uses, nor is it intended to be, but to guard and protect residences and inoffensive business places from annoyance, discomfort, and inconvenience of offensive establishments, such as are enumerated, and others of like character. And in applying the restriction to trades. occupations, and establishments other than those specifically prohibited must be given a reasonable and fair construction.

"If the noise and odors were slight and infrequent, and such as would only annoy and disturb a supersensitive or highly nervous person, it would be unfair to hold that the business or occupation came within the restriction; while, on the other hand, it would be equally unfair to hold that it was only applicable when they reached that degree that would annoy and disturb persons accustomed to noise and unpleasant odors by reason of their occupation or business. The test should be the effect upon the normal and rational man.

"Exclusive of the taverns and drinking saloons, the remaining enumerated occupations or businesses may be divided into two classes, the noisy and the malodorous, and both are designated as offensive.

"Now, from the great preponderance of the testimony, it seems clear to us that a garage is of necessity both noisy and malodorous, not to the same degree or extent as some of the specifically prohibited occupations, but sufficient to annoy and disturb the witnesses of the plaintiffs, apparently normal and rational men, in the quiet and comfortable enjoyment of their homes.

"The law as to what constitutes a noisy nuisance was carefully considered and reviewed by Judge Thayer (and his opinion was adopted by the Supreme Court) in Ladies' Decorative Art Club's Appeal (Pa.) 13 Atl. 537, and in that opinion cites approvingly the language of Sir George Jessel, Master of Rolls, in Broder v. Saillard, L.

R. 2 Ch. Div. 692: 'If there were no authority on the question, I should have felt no difficulty about it, because I take it the law is this: That a man is entitled to the comfortable enjoyment of his dwelling house. If his neighbor makes such a noise as to interfere with the ordinary use and enjoyment of his dwelling house, so as to cause serious annoyance and disturbance, the occupier of the dwelling house is entitled to be protected from it. It is no answer to say that the defendant is only making a reasonable use of his property, because there are many trades and many occupations which are not only reasonable, but necessary to be followed, and which still cannot be allowed in the proximity of dwelling houses, so as to interfere with the comfort of their inhabitants.'"

The Supreme Court of the State of Massachusetts in Evans v. Foss, 194 Mass. 513, 80 N. E. 587, 9 L. R. A. (N. S.) 1039, also held that a similar restriction in a deed included the garage business. It was also held in the case of Barrow v. Richards, 8 Paige's Chancery (N. Y.) 351, 35 Am. Dec. 713, that conducting a retail coal business came within the meaning of a covenant in a deed which provided that there should not be conducted on the property conveyed, any business in any wise offensive to the neighboring inhabitants.

The question as to whether the gasoline filling station business is obnoxious or offensive, when conducted within essentially a residential district, must be determined by considering the nature and effect of such business, which is hereinafter done.

To state concretely the situation presented by this case, the city of Muskogee, by enacting the foregoing ordinance, has found that a gasoline filling station conducted on plaintiff's lots would be a nuisance, and therefore denied plaintiff the use thereof for that purpose; and the question which was presented to the trial court, and now to this court, is whether said ordinance is arbitrary and unreasonable.

In the case of Magnolia Petroleum Co. v. Wright, 124 Okla. 55, 254 Pac. 41, this court, after reviewing its former decision, said:

"The Constitution and statutes delegate to cities power to declare and abate nuisances. * * * A grant of power to a municipality to declare what shall constitute a nuisance and to remove same, while it does not empower the municipality to declare a thing a nuisance which is clearly not one, does empower it to declare anything a nuisance which by reason of its location or use, or local conditions and surroundings, may or does, among other things, become a

nuisance within the statutory definition of that term.

"A public drive-in oil and gas filling station is not a nuisance per se; it may be a nuisance per accidens."

It will be observed, from an examination of the foregoing case, that it, in principle, involved the same question presented in this case. That was a case involving the validity of a certain ordinance of the city of Altus, fixing zones around churches and schoolhouses within which a gasoline filling station business could not be conducted. The court upheld the ordinance in that case as a proper exercise of the police power of the city, and following the reasoning and conclusion in that case, we see no reason why the court should now hold the city has exceeded its authority in this case.

It is urged by the defendant that the trial court having found generally for him upon conflicting testimony, such finding is binding upon this court, unless the same is greatly against the weight of the evidence. We cannot agree that either the rule in law or equity cases upon appeal is the proper one to be applied to this question, as the same is here presented.

The Supreme Court of this state, having under consideration this same proposition in the case of Calkins v. Ponca City, 89 Okla. 100, 214 Pac. 188, announced the applicable rule in the following language:

"This contention of the plaintiff is presented as if this were an appeal from a final judgment in a proceeding in equity instituted by the city to have the buildings in question adjudged and decreed a public nuisance, and removed as such. If that were this case, this court would review the evidence, and if it found that the decree of the trial court was clearly against the weight of the evidence, the same would be vacated and set aside, and such judgment or order entered as the record justified. But the principle governing and controlling this case does not warrant this court in reviewing the evidence, as it would in such a case, for the purpose of reaching such a determination, as will be seen later. * * *

"With the view of properly exercising this governmental and legislative function, the state delegates to municipalities, either by the Constitution or statutes of the state, the power to exercise these functions. In this state, both the Constitution and the statutes have given municipalities power to pass ordinances determining and abating nuisances. Under and by virtue of its charter provision above quoted, the action of the defendant city in passing the ordinance in question was exercising its public function given by the state. Flannagan v. City of

Bloomington, 156 Ill. App. 162; Tomerlin v. Hildreth et al., 65 N. J. L. 438; Clark v. Atlantic City, 180 Fed. 598. * * *

"The extent of the power of the court in the proceeding at bar is limited to a determination as to whether the ordinance in question is, under the facts, unreasonable and arbitrary, and if such ordinance is not unreasonable or arbitrary, the determination by the commissioners that the buildings in question were injurious to the health and safety of the community, and therefore a nuisance, is conclusive upon the court, and the action of the trial court in dissolving the injunction should be affirmed."

It was not the duty of the trial court to pass upon the question presented in this case, as if no prohibitory ordinance had been enacted, and as it would in equity action to restrain the erection and operation of the filling station as being a nuisance. By the passage of the ordinance the city determined that such business would be a nuisance if conducted at the place proposed. The trial court sat, as this court here does, a reviewing tribunal to determine whether the ordinance of the city of Muskogee, in its application to plaintiff's property rights, was in excess of the police power of the city as being unreasonable and arbitrary. And in passing upon the question, it was the duty of that court, as well as the duty of this court, to call to its aid matters of common knowledge in regard to this business, and the effect of its operation, which has become the judicial knowledge of that court and of this, as stated in the previous decisions of this court.

The case of Walcher et al. v. First Presbyterian Church of Norman, 76 Okla. 9, 184 Pac. 106, involved the validity of an ordinance prohibiting the operation of a laundry within 150 feet of any church, and the court laid down the rule here applicable in saying:

"A court passing upon an ordinance of regulatory nature, in deciding whether it is reasonable, can take judicial notice of matters of common knowledge and of changing conditions in manner of living."

And this court in the case of Magnolia Petroleum Co. v. Wright, supra, further said:

"Courts have current and common knowledge relative to automobiles, including the fact that they make unusual noises (Ex parte Berry [Cal.] 82 Pac. 44); and the fact that a city arc light will cast its rays farther than 300 feet (Meehan v. Great Northern Ry. Co. [Mont.] 114 Pac. 781). Likewise, we know judicially— and the evidence is undisputed—that noises really out of the ordinary, and of more or less inten-

sity would emanate from such filling station by such stopping and starting of engines and otherwise, and be audible farther than 100 feet upon property of plaintiffs; that such would be the case even though such station be an ordinary one and conducted by defendant in the ordinary and even careful and usual manner. Explosions of gasoline motors, being the principle of their mechanism, and other unusual noises of automobiles, are certainly of the most common knowledge and notoriety."

Therefore, under the authority of the above case, and also the case of McPherson v. Presbyterian Church, 120 Okla. 40, 248 Pac. 561, this court must say that, if it be true that the trial court found adversely to the above conclusion as to the manner of the operation of a gasoline filling station, and its effect on the enjoyment of surrounding properties, such finding is not binding on this court, when it judicially takes knowledge that such business has about the attributes and effects set out in the answer of defendants in this action.

The plaintiff asserts that the ordinances in question are void because they place arbitrary and legislative power in the hands of a few citizens to say whether the same shall be effective.

This objection is completely answered by the Supreme Court of the United States, in a case involving the right of the city of Chicago to prohibit the erection of billboards in certain residential districts, and discussing the question, the court said:

"The claim is palpably frivolous that the validity of the ordinance is impaired by the provision that such billboards may be erected in such districts as are described if the consent in writing is obtained of the owners of a majority of the frontage on both sides of the street in any block in which such billboard is to be erected. The plaintiff in error cannot be injured, but obviously may be benefited, by this provision, for without it the prohibition of the erection of such billboards in such residence sections is absolute. He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or of property. Tyler v. Judges of Ct. of Registration, 179 U. S. 405, 45 L. Ed. 252, 21 Sup. Ct. Rep. 206; Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 58 L. Ed. 713, 34 Sup. Ct. Rep. 359. To this we may add that such a reference to a neighborhood of the propriety of having carried on within it trades or occupations which are properly the subject of regulation in the exercise of the police power is not uncommon in laws which have been sustained against every possible claim of unconstitutionality, such as the right to maintain saloons (Swift v. People, 162 Ill. 534,

33 L. R. A. 470, 44 N. E. 528), and as to the location of garages (People ex rel. Busching v. Ericsson, 263 Ill. 368, L. R. A. 1915D, 607, 105 N. E. 315, Ann. Cas. 1915C, 183). Such treatment is plainly applicable to offensive structures." Thomas Cusack Co. v. City of Chicago et al., 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472.

Without this provision in the ordinance the erection of a filling station on plaintiff's lots stood prohibited, and the questioned provision of the ordinance does not authorize the citizens to curtail any right of the plaintiff, but only gave to them the power to bestow upon him a privilege which he otherwise did not enjoy.

The plaintiff next contends that these ordinances are in violation of the Fourteenth Amendment to the Constitution of the United States, and section 7, article 2 of the Constitution of this state, in that they operate to take his property without due process of law.

The Supreme Court of Iowa, having under consideration in the case of Des Moines v. Manhattan Oil Co., 193 Iowa, 1096, 184 N. W. 823, 23 L. A. R. 1322, the identical question here presented, has well disposed of this question in the following language:

"The constitutional guaranties invoked by counsel lie at the very foundation of all those rights of person and property which are the heritage of a free people associated in a republican form of government—rights which the courts have no disposition to ignore or fritter away. Nor can the court properly ignore that other settled rule that neither the Constitution nor its amendments were designated to limit the police powers of the state. As was said by Field, J., in Barbier v. Connolly, 113 U. S. 27, 28 L. Ed. 923, 5 Sup. Ct. Rep. 357, supra, speaking of the Fourteenth Amendment to the Constitution of the United States: 'Neither the amendment—broad and comprehensive as it is— nor any other amendment was designated to interfere with the power of the state, sometimes termed the police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity."

"This is not to say that under the guise of police power the state may do or authorize that which the Constitution expressly or impliedly forbids, but with that reservation, the authority of the state is supreme. Among those prohibitions is the one which makes private property immune against seizure or condemnation to public use without compensation. It may be taken for that purpose by exercise of the power of eminent domain only upon making due compensation, but the power of eminent domain is quite distinct from the police power, and for the incidental loss or injury which the individual member of the public may sustain by reason of valid police regulations, no compensation is recoverable. There is in such cases 'no divesting of property rights by the operation of the statute, and the regulations to which the exercise of such rights is thereby subjected is not prevented by any limitation upon the authority of the Legislature prescribed by the federal or state Constitution. The interests of the individual are subordinate to the public good, and the constitutional guaranties of the security of private property were not designed and do not operate to prohibit the reasonable restriction of its use by legislation enacted within the sphere of the police power for the promotion of the general welfare.' Overton v. Harrington, 126 Md. 32, 94 Atl. 325; Mugler v. Kansas, 123 U. S. 623, 31 L. Ed. 205, 8 Sup. Ct. Rep. 273.

"Says Judge Dillon: 'Every citizen holds his property subject to the proper exercise of this power, either by the state Legislature, * * * or by public or municipal corporations to which the Legislature may delegate it. * * * It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbance.'" 1 Dill. Mun. Corp. (4th Ed.) p. 212.

A further answer to the constitutional questions here raised has been made by the Supreme Court of the United States, in the case of Reinman v. Little Rock, 237 U. S. 171, involving the power of the city council of Little Rock, to enforce an ordinance prohibiting livery stables within certain districts of the city. The court said:

"Even though a livery stable is not a nuisance per se, it is within the police power of the state to regulate the business, and to declare a livery stable to be a nuisance, in fact and in law, in particular circumstances and particular places; if such power is not exercised arbitrarily or with unjust discrimination it does not infringe upon rights guaranteed by the Fourteenth Amendment. * * *

"The ordinance of the city of Little Rock, Ark., making it unlawful to conduct the business of a livery stable in certain defined portions of that city, is not unconstitutional as depriving an owner of a livery stable already established within that district of his property without due process of law, or as denying him equal protection of law."

The council of the city of Muskogee determined that conducting the business of gasoline filling stations within a certain dis-

trict would be a nuisance by being offensive and obnoxious to owners in the use of their surrounding properties. This district is fixed and designated by being outside the fire limits and within the corporate limits of the city, and is clearly established by the ordinance creating the fire limits, and the one defining the limits of the municipal corporation; and it is admitted that plaintiff's property is located within this district. The power of the trial court and of this court is limited to a determination of the question whether under the facts as applied to plaintiff's property the enforcement of such ordinance in question would be unreasonable and arbitrary.

Within a radius of 300 feet from this proposed filling station, and which is the distance requiring the permission of two-thirds of the property owners, there are a church, residences, several occupied apartment houses; and though two or three of these apartment houses have stores beneath them, this is essentially a residence and and not a business district of the city. It is evident that the operation of a filling station at the place proposed would annoy and disturb the surrounding inhabitants; tend to render their properties less desirable for the uses to which they are now dedicated, and depreciate the value of the surrounding homes.

We therefore find ourselves unable to say that the ordinances passed by the city of Muskogee and here assailed, in their operation upon plaintiff's property rights, are unreasonable and arbitrary.

Having concluded that the passage of the ordinances, here questioned, was within the authority given to the city by the Legislature under section 4562, supra, and within the general police power of the city; that such ordinances do not contravene any section of the United States Constitution, nor the Constitution of this state; and it not appearing that such ordinances are unreasonable and arbitrary in their operation upon plaintiff's property rights, it then becomes the duty of this court to say that the same are here enforceable, and that the trial court erred in awarding the writ.

It follows that this case should be reversed and remanded, with directions to the trial court to enter judgment refusing plaintiff's application for a writ of mandamus.

BENNETT, TEEHEE, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.