EMPLOYERS' CASUALTY CO. et al.
v. BENNETT et al.

No. 21752. Opinion Filed May 5, 1931.

Clayton B. Pierce and A. M. Covington, for petitioners.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for respondents.

McNEILL, J. This is an original proceeding brought in this court to review an order of the Industrial Commission made on the 30th day of August, 1930, awarding the respondent C. E. Bennett compensation for certain injuries, against the petitioners, Independent Casing Crew and Employers' Casualty Company, its insurance carrier. The Industrial Commission relieved the respondents Laurel Oil & Gas Company, United States Fidelity & Guaranty Company, Wofford Drilling Company, and Hartford Accident & Indemnity Company of any liability for compensation in the matter.

On the 26th day of May, 1929, the Independent Casing Crew, operating at Maud, Okla., was called upon to run some casing for the Laurel Oil & Gas Company. The crew was composed of the respondent C. E. Bennett, C. E. Jackson, R. A. Garrett, and Bill Wadkins, who were regular members of the crew, and Newt Allen, who was an extra man taking the place of one of the regular members of the crew. The fifth regular member of the crew was a man by the name of Wadden. While doing casing crew work with aforesaid workmen, the respondent Bennett received injuries, which formed

the basis of this action before the Commission.

Petitioners contend that this is a "casing crew" case and that the subject of the status of casing crews under the Workmen's Compensation Act has repeatedly been before this court.

The Workmen's Compensation Act, section 7284, C. O. S. 1921, as amended by paragraph 4, section 2, chapter 61, Session Laws 1923, in defining the word "employee" is as follows:

" 'Employee' means any person engaged in manual or mechanical work, or labor in the employment of any person, firm or corporation carrying on a business covered by the term of this act, and shall include workmen associating themselves together under an agreement for performance of a particular piece of work, in which event such persons so associating themselves together shall be deemed employees of the person having the work executed; provided, that if such associated workmen shall employ two or more laborers or workmen in the execution of such contract, then as to such employed workman or laborers, both the associated employees and the principal employer shall at once become subject to the provisions of this act relating to independent contractors."

An examination of this record shows that this is not the regular termed "casing crew" case, where workmen associate "themselves together under an agreement for performance of a particular piece of work," as set forth in aforesaid section 7284, supra, and divide among themselves the amount paid for the work.

Respondent testified, in substance, that Mr. George Cook was the manager of the Independent Casing Crew; that he had three active casing crews at the time he sustained the injury, which necessitated the employment of about 15 men regularly, who were paid by Mr. Cook; and that the said casing crews were called the Tom Cook Independent Casing Crew. A part of respondent's testimony is as follows: .

"Q. Tom Cook took them from one casing crew to another at his will? By Mr. Evans: If your Honor please, George Cook, not Tom. By Judge Doyle: He took them from one crew to another and assigned them around. A. Yes, sir. Q. You heard his testimony in this case? A. Yes, sir. Q. There were three of these men, including yourself, together in this casing crew about a year? A. Yes, sir; most of the year. Q. The other two men on and off? A. Mr. Wadden came on in the spring. Then we had on an extra man. Q. George Cook made the contract, his initials J. G., that is the man you call George? A. Yes, sir. Q. You don't know who he contracted with? A. No, sir. Q. These casing crews get $65 a tower. A. Yes, sir. Q. They received that money whether Mr. Cook made a loss or profit? A. Yes, sir. Q. Of that he paid the insurance, for instance, you say you carried your insurance? A. Yes, sir. Q. By the necessary expenses in connection—making this contract? A. Yes, sir. * * * Q. Cook owned all the tools? A. Yes, sir. Q. He claimed the right of discharging any man he wanted to at any time? A. Yes, sir. Q. Did he do it? A. I don't know that he ever fired any man. Q. If a substitute was to be needed, he hired this substitute and didn't consult you? A. No, sir; if he hired a steady man, he always hired him. Q. You didn't have any voice who would be the fifth man? A. No, sir. * * * Q. What does Mr. Cook have to do with it? A. About all he does is pay off and rustle work. Q. He goes out and gets the work and pays off the men? A. Yes, sir. * * * Q. What basis you work on, how much a day, what is his percentage of that? A. We get $65 a tower. Q. He gets 20 per cent. of that? A. Yes, sir. He rustled the jobs and collected the money and paid the men off? A. Yes, sir, and furnished the tools. Q. Were either of the Cooks located at Maud at all? A. No, sir. Q. Then they didn't go out on the job and do any supervision? A. No, not at Maud; he worked at Seminole. Q. Who does? A. George Cook. Q. Does he work in the crew up at Seminole? A. Yes, sir. * * * Q. Well, neither Tom Cook nor George Cook was a member of your crew? A. No, sir."

The evidence shows that the respondent formerly worked for Tom Cook in the state of Texas in casing crew work, and was sent by him to work in Oklahoma under George (J. G.) Cook, his brother, in casing crew work. George Cook managed three casing crews in Oklahoma, operated under some plan with his brother, Tom Cook, who managed the casing crews in Texas and Oklahoma. Mr. Tom Cook owned the tools, and all of the 15 men regularly employed in the three crews, five men to a crew, were hired by George Cook. Each man was paid "per tower" for his work. George Cook employed and discharged the members of the crew. The members of the crew had no voice in this matter, nor did they have anything to say as to who should be members of the crew. The whole management was exclusively under the control of George Cook. In other words, this evidence shows that this is a case wherein George Cook was operating an independent casing crew business, employing men of his own choice to work in groups of five, to perform work for which he contracted to do, and paid the men so much for their work, irrespective of whether there was a profit or loss. Cook did the associating together rather than the men.

Counsel for petitioners cite casing crew cases which have been before this court. This case is clearly distinguishable from those cases. They contend for the rule announced in the case of Gruver Drilling Co. v. Morrow, 126 Okla. 18, 257 Pac. 1104, wherein Morrow was an extra workman, substituting for one of the regular members of the Dixon Casing Crew, and who was injured while the casing crew was casing for the Gruver Drilling Company.

In this case the court said:

"The only question involved in this appeal, necessary to a decision, is whether claimant, at the time of his injury, was an employee of the petitioner, Gruver Drilling Company, or whether he was at said time, an employee of the Dixon Casing Crew. The evidence discloses that the said Dixon Casing Crew was composed of one Mr. Dixon and four other men associating themselves with him; that the said casing crew was engaged by the Gruver Drilling Company to run casing in an oil well; that the Dixon Casing Crew employed on said job as extra workmen the claimant and two other extra men. * * *

"Under the evidence in this case, claimant, unlike the regular members of said crew, had no voice in the management of the affairs of said crew; had no authority to employ nor direct them in the execution of their work, but, on the contrary, was himself at all times under their absolute directions and control. In these circumstances, it occurs to us that it is idle to argue that claimant was not an employee of said crew."

In the Gruver Case, supra, the court takes occasion to make the comment that the Dixon Casing Crew v. State Industrial Commission et al., 108 Okla. 211, 235 Pac. 605, and Twin State Oil Co. v. Shipley, 113 Okla. 3, 236 Pac. 578, cited by counsel for petitioners in their brief herein, have no bearing upon the facts in that case, and states:

"In the case of Dixon Casing Crew v. State Industrial Commission et· al., the claimant was W. A. Dixon, himself a member and also the manager of the casing crew, and, at the time of the injury, was engaged, as a member of said crew, in running and pulling casing under contract with the Gruver Drilling Company. Under this state of facts, the court held the said W. A. Dixon to be an employee of the Gruver Drilling Company, under the terms of the act above quoted. A similar state of facts exists in the case of Twin State Oil Co. v. Shipley, supra.

"It is obvious that these decisions have no bearing upon facts in this case."

In the Dixon Case, supra, the claimant, Dixon, and four others, who styled themselves the Dixon Casing Crew, were engaged in running and pulling casing for the Gruver Drilling Company. The men divided the proceeds equally among themselves, except that Dixon, the claimant, was allowed an additional ten per cent. for collecting and keeping the time book. In that case it is apparent that the "claimant was one of the associate members who undertook, together with his other associates, to perform work and labor for the Gruver Drilling Company for hire," and "it therefore created the relation of employer and employee between the Gruver Drilling Company and the associate members of the Dixon Casing Crew." In other words, the associates in the casing crew were paid out of the earnings of the Dixon Casing Crew, which were equally divided between them, with the exception of the extra payment of ten per cent. paid to Dixon for collecting and keeping the time book.

The facts in all of these cases cited by counsel for petitioners are different from the case at bar and have no pertinent application to the facts presented in the instant case.

We are of the opinion that the case of Tom Cook Independent Casing Crew et al. v. Meadows, decided by this court March 31, 1931, 148 Okla. 69, 297 Pac. 270, is decisive of this case, wherein the court stated:

"The only question presented for review here is stated as follows: The State Industrial Commission committed error in fixing liability on the Tom Cook Independent Casing Crew and its insurance carrier and relieving from liability the Crawford Drilling Company and its insurance carrier, Globe Indemnity Company. The record discloses that Tom Cook and his brother operated this and two other casing crews. * * *

"Both Cook and Meadows testified that the Cook brothers worked in the field with the crew. The Industrial Commission found that all three of said casing crews were under the direction of Tom Cook; that the members of said casing crew were each paid by the tower; and that said Tom Cook had the right at any time to discharge any member of the Tom Cook Independent Casing Crew. The Commission further found: 'The Commission is of the opinion, on consideration of the foregoing facts: That claimant, W. M. Meadows, was an employee of the Tom Cook Independent Casing Crew, one of the respondents herein, at the time he received the accidental injury.' The Commission further found that the employees were not joint adventurers in the casing business.

"Petitioner in his brief cites several cases where the casing crew was composed of men jointly interested, who shared in the losses and divided the profits. The case at bar is distinguished from those cases. In the

case at bar the Crawford Drilling Company did not employ Meadows. Neither did the Cook brothers enter into the contract with the Crawford Drilling Company as agent of Meadows. The Cook brothers had the right to use Meadows, if his services were satisfactory, or to discharge him and employ some one else. The fact that the Cook brothers, in fixing the compensation paid to their employees, figured 20 per cent. profit to themselves does not change the relation of employer and employee to that of joint adventurers.

"The Industrial Commission found that claimant, respondent herein, W. M. Meadows, was the employee of Tom Cook Independent Casing Crew, and there is competent evidence to support said finding, and the same, being a finding of fact, will not be disturbed by this court on review."

The Commission in the case at bar made findings of fact and conclusions of law as follows:

"That it is admitted by all of said respondents and their insurance carriers that claimant, C. E. Bennett, on May 26, 1929, sustained an accidental personal injury arising out of and in the course of his employment as a member of the 'Tom Cook Independent Casing Crew,' while engaged in a hazardous employment covered by and subject to the provisions of the Workmen's Compensation Law, to wit, the drilling of wells incident to the production of oil and gas for the Laurel Oil & Gas Company, and that the insurance carrier of said respondent, 'Tom Cook Independent Casing Crew,' the Employers' Casualty Company, had prior to said date issued a standard workmen's compensation insurance policy covering any liability of said respondent under the Workmen's Compensation Law, and the U. S. Fidelity & Guaranty Company, was the insurance carrier of the Laurel Oil & Gas Company, and had prior to said date issued a standard workmen's compensation policy covering the liability of this respondent under the Workmen's Compensation Law, and the Hartford Accident & Indemnity Company was the insurance carrier of the respondent, Wofford Drilling Company, and had prior to said date issued a standard workmen's compensation policy covering the liability of said respondent under the Workmen's Compensation Law.

"That on said date, May 26, 1929, the members of the 'Tom Cook Independent Casing Crew,' one of the respondents herein, were engaged in manual and mechanical labor, to wit, placing of casing in a well being drilled by respondent, Wofford Drilling Company, said well being drilled for the respondent, Laurel Oil & Gas Company, the said 'Tom Cook Independent Casing Crew' being composed of five members, who had associated themselves together to do manual and mechanical work connected with and incident to the casing of oil wells as

contracted for by Tom Cook, a member of said casing crew, and a member of two other casing crews, each called the 'Tom Cook Independent Casing Crews,' all three of said casing crews being under the direction of Tom Cook; that said casing crews interchanged work, that at various times under the direction of Tom Cook two or more substitutes, not members of the respondent, 'Tom Cook Independent Casing Crew,' were employed in said work by the said Tom Cook, and the members of the said casing crew were paid by the tower; that the said Tom Cook had the right at any time to discharge any member of the 'Tom Cook Independent Casing Crew,' one of the respondents herein. * * *

"That said respondent, 'Tom Cook Independent Casing Crew,' and its insurance carrier, the Employers' Casualty Company, deny that said claimant, C. E. Bennett, was an employee of said respondent, 'Tom Cook Independent Casing Crew,' on May 26, 1929, or at any other time.

"The Commission is of opinion, on consideration of the foregoing facts: That claimant, C. E. Bennett, was an employee of 'Tom Cook Independent Casing Crew,' one of the respondents herein, at the time he received the accidental injury in the course of his employment as aforesaid, and that said respondent, 'Tom Cook Independent Casing Crew,' and its insurance carrier, the Employers' Casualty Company, are liable for said compensation, and for medical expenses incurred by claimant as a result of said accidental injury."

The findings of fact are not as comprehensive as the evidence justifies, but the Commission has arrived at a correct determination of this matter, and in its conclusion of law announced that the claimant, C. E. Bennett, was an employee of Tom Cook Independent Casing Crew.

Even though a judgment may be based upon an erroneous finding of fact, this does not justify setting such judgment aside.

In the case of Kibby v. Binion et al., 70 Okla. 96, 172 Pac. 1091, this court said in syllabus 2:

"Where, in a trial to the court, the court renders a proper final judgment in the case, it is entirely immaterial that such judgment is predicated by the court upon an erroneous finding of facts or a misinterpretation of the law, as the ground upon which the court proceeded is not a subject of review by an appellate court."

We conclude that this evidence clearly shows that the respondent was an employee of the Independent Casing Crew and does not come under the provision of "workmen associating themselves together under an agreement for performance of a particular

piece of work," as contemplated by the Workmen's Compensation Act.

The order of the Commission in awarding respondent herein compensation against the petitioners, Independent Casing Crew and Employers' Casualty Company, the insurance carrier, is affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. CLARK and RILEY, JJ., absent.